BRIGHT BELT WAREHOUSE ASSOCIATION, INC., v. TOBACCO PLANT-ERS WAREHOUSE, INC., FARMERS WAREHOUSE, INC., FENNER'S WAREHOUSE, INC., EASLEY'S WAREHOUSE, INC., W. E. COBB, H. P. FOXALL, ROY M. PHIPPS, JIMMIE D. SMITH, R. J. WORKS, AND R. J. WORKS, JR.

(Filed 23 November, 1949.)

**1. Associations § 1—**

An association of tobacco warehousemen organized to encourage fair trade practices in the business, which has no definite procedure to determine membership, is a voluntary organization notwithstanding it is incorporated without capital stock, and given the right to sue and be sued.

**2. Associations § 2—**

Warehousemen who affiliate with the warehousemen's association, contribute to its support, attend its meetings and receive whatever benefits are derived, are members thereof notwithstanding that the association has promulgated no definite procedure to determine membership.

**3. Associations § 3—**

The charter and by-laws of an association constitute a contract between it and its members, and each member is deemed to have consented to all reasonable rules and regulations promulgated in accordance with its by-laws, which may be enforced by the association by injunction unless unreasonable, unlawful or contrary to public policy.

**4. Same—**

The delegation by an association of power to its board of governors to promulgate rules and regulations for the orderly marketing and handling of tobacco on the auction warehouse floors of its members is insufficient to give its board of governors power to prohibit auction sales altogether. Thus where its board of governors is delegated authority to regulate sales, a rule prohibiting sales unless attended by a buyer from each of three specified tobacco companies, is in excess of the delegated authority, and void.

BARNHILL, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Frizzelle, J.,* at September Term, 1949, of WAKE.

This suit was instituted to enjoin the defendants from conducting auction sales of leaf tobacco in their warehouses other than in accordance

with the rules and regulations promulgated by plaintiff's Board of Governors, and specifically to prevent defendants from selling tobacco during the season of 1949 without the presence of an adequate number of buyers as defined by the resolution of said Board. It was alleged that the defendants were members of plaintiff Association and under obligation to observe the rules properly determined and declared which pertain to the business of conducting auction sales of tobacco on warehouse floors. Upon the verified complaint a temporary restraining order and notice to show cause were issued. The defendants answered setting forth several defenses to plaintiff's suit, and on the hearing before Judge Frizzelle demurred *ore tenus* to the complaint and moved for judgment that on the facts alleged plaintiff was not entitled to continuance of the restraining order. The demurrer was overruled, the motion denied, and the restraining order continued until final judgment. Defendants excepted and appealed.

*William T. Joyner and William T. Joyner, Jr., for plaintiff, appellee.*

*Battle, Winslow & Merrell and Spruill & Spruill for defendants, appellants.*

DEVIN, J.   The plaintiff bases its right to enjoin the defendants from violating rules promulgated by plaintiff's Board of Governors upon allegations that defendants are tobacco warehousemen engaged in the business of conducting sales of leaf tobacco by auction, and that this business has grown to such an extent that it became necessary that rules and regulations be established to prevent disorder and injury to growers and warehousemen alike; that to effectuate this purpose and to encourage fair trade practices plaintiff Corporation was organized. It was alleged that the defendants who operate fourteen warehouses in Rocky Mount, North Carolina, are members of or affiliated with plaintiff Association, and are under obligation to comply with all its reasonable rules and regulations.

It was stated in the complaint that in 1948 growers in North Carolina produced 750,000,000 pounds of flue cured bright-leaf tobacco which was sold under the auction system on warehouse floors for approximately $375,000,000, and it is alleged that in view of the expanded proportions of the industry and the keen competition between warehousemen and markets for the patronage of growers, and in order to carry out plaintiff's declared purpose of promoting the orderly marketing of tobacco and encouraging fair practices in the conduct of auction sales in the interest of growers, warehousemen and buyers, the plaintiff Association at its annual meeting June 6-8, 1949, adopted a resolution authorizing its Board of Governors to determine not later than July 1st market open-

ing dates, and "to announce and publish such rules and regulations as may in the opinion of the Board best provide for the proper and orderly marketing and handling of tobacco on auction warehouse floors." Pursuant to this delegation of authority the Board of Governors met June 30, 1949, and announced and published the opening dates of markets, and rules and regulations for "orderly marketing and handling tobacco on warehouse floors," which related to the speed of sales, the size of piles, and selling hours. On July 20 the Board of Governors again met and adopted the following resolution:

"1. That an essential element of a *bona fide* sale of tobacco at auction is that there shall be assigned to such sale an adequate set of buyers prepared to bid at the competitive sale. The minimum requirement of an adequate set of buyers is the following:

"(a) Buyers for each of the three major domestic tobacco companies (Reynolds Tobacco Company, American Tobacco Company, and Liggett & Myers Tobacco Company), and

"(b) Buyers of at least three other recognized companies purchasing tobacco for export or for export and domestic consumption.

"2. No warehouse should offer tobacco for sale at auction unless and until an adequate set of buyers as defined above has been assigned to and secured for such sale."

It was alleged that defendants have complied with all rules and regulations promulgated by plaintiff's Board of Governors except those referring to sales made in absence of an adequate set of buyers as defined by the plaintiff's Board of Governors; that four sets of buyers are assigned by the three major domestic companies to the Rocky Mount market, permitting four simultaneous sales on that market, but the defendants in addition thereto have conducted and continue to conduct an additional or fifth sale of tobacco on the floors of defendants' warehouses when the buyers present do not include representatives from each of the three major domestic companies; that notwithstanding requests from plaintiff and farm organizations to discontinue this practice the defendants have refused and have announced their purpose to continue such sales.

Plaintiff further alleges that defendants' failure to discontinue these additional sales will result in injury to the growers of tobacco in deficiency of price, and to the plaintiff and other members of plaintiff Association who are abiding by plaintiff's reasonable marketing regulations, and will cause dissatisfaction with the auction system of marketing tobacco; that such injury cannot be readily calculated in money, and is irreparable.

The defendants, answering, admit that they are proprietors of warehouses in Rocky Mount wherein auction sales of leaf tobacco are conducted, and that plaintiff Association has been incorporated for the purposes therein declared, but defendants say the plaintiff has no capital

stock and it has set up no definite procedure to determine membership; that it is merely a loose organization of warehousemen on a voluntary basis co-operating for a common end; that the defendants have not joined the plaintiff in any formal way, but they admit they are members of Eastern North Carolina Warehouse Association, and that with their knowledge a portion of the dues paid by defendants is allocated to plaintiff.

Defendants set out in their answer that on the Rocky Mount market, on defendants' floors, each season, for past five years, have been sold approximately 60,000,000 pounds of leaf tobacco; that this market has grown until on the basis of number of pounds sold it is second in size in Eastern North Carolina; that only four sets of buyers embracing representatives of each of the leading manufacturers have been assigned to this market, which under plaintiff's rule would have permitted only four simultaneous sales; that for the convenience and accommodation of the growers, and to handle the increasing volume of tobacco brought there for sale by growers, it was deemed necessary by defendants that an additional or fifth sale be conducted; that on this fifth sale representatives of American Tobacco Company and Liggett & Myers Tobacco Company have not been bidders, but it is denied the sales are conducted without substantial and competitive bidding, and it is denied that any injury has been caused or threatened to the tobacco farmers; that under the rule any grower may, if the price bid is not satisfactory, "turn his tag," decline to sell, and remove his tobacco elsewhere for sale; that on these additional sales the small proportion of tags turned is no greater than on other sales.

Defendants further allege that the action of plaintiff's Board of Governors in declaring that "no warehouse should offer tobacco for sale at auction until 'an adequate set of buyers' as defined above has been assigned to and secured for such sale," if intended to prohibit sales without the presence of such buyers, is beyond the power and authority of such Board, and in excess of the authority conferred on said Board by plaintiff corporation, and that the action of the Board in so declaring was *ultra vires,* and insufficient to authorize the court to restrain the defendants from conducting auction sales of tobacco voluntarily brought to them by growers for such sale, or to prevent sales which are participated in by growers, warehousemen and buyers in the exercise of their personal rights so to do without complaint; that the authority given the Board of Governors was to regulate, not to prohibit; that the resolution set out, if it constitutes authority to plaintiff's Board to prohibit sales, is in restraint of trade and violates statutory and constitutional rights, and is against public policy; that the requirements of the resolution of the Board of Governors that no sale be held without the presence of a representative of each of the three leading manufacturers is unreasonable, for that the

absence of a single buyer representing either of these manufacturers would prevent the sale from being held, thus delegating to these three manufacturers, or to any one of them, the power to veto auction sales altogether, and by failing to assign buyers to cripple or destroy the market. Defendants pray that the restraining order heretofore issued in this cause be dissolved.

From the pleadings herein summarized, it appears that the plaintiff is an association of tobacco warehousemen. Although incorporated without capital stock, and given legal entity with power to sue and be sued, it is nevertheless a voluntary association organized primarily for the benefit of those engaged in this business. While apparently there is no definite criterion or procedure for determining membership therein, it would seem that those engaged in the business who affiliate with the plaintiff, contribute to its support, attend its meetings and receive whatever benefits are derived, may properly be regarded as members thereof.

It follows that the articles of association for the purposes expressed in the charter and the by-laws of the plaintiff constitute a contract between plaintiff and its members which imposes certain obligation on the members among themselves and with respect to the association or corporation. Hence, as a consequence of membership in an incorporated association for mutual benefit, each member is deemed to have consented to all reasonable rules and regulations pertaining to the conduct of the business which have been properly determined and promulgated, and it is well settled that the enforcement of rules and regulations which are not unreasonable, immoral, unlawful, or contrary to public policy, affords ground for judicial action and relief by injunction. 4 A.J. 459, 460; 7 C.J.S. 34; *Booker & Kinnaird v. Louisville Board of Fire Underwriters,* 188 Ky. 771, 21 A.L.R. 531. In *Gray v. Warehouse Co.,* 181 N.C. 166, 106 S.E. 657, this Court upheld the principle that the business of operating warehouses for the public marketing of tobacco was one affected with a public interest and subject to reasonable public regulations, and in a concurring opinion by *Justice Hoke* it was said that "subject to such reasonable rules and regulations as may be established by the public agencies, and when not interfering with same, the authorities in control and management of these warehouses have the power to establish for themselves such reasonable rules and regulations as may be required to promote business efficiency and insure fair and honest dealing in the transactions occurring there."

Applying these principles to the facts here pleaded, we think the defendants were members of plaintiff Association and under obligation to comply with reasonable rules pertaining to the conduct of sales under the auction system in the warehouses operated by them, and that the resolution of June 6-8, 1949, duly adopted in a meeting of the members

of plaintiff Association, and in which some of these defendants participated, was a valid exercise of a power resting in the plaintiff by the consent of its members and was and is binding upon the defendants. By this resolution the plaintiff Association authorized and directed its Board of Governors, after investigation and consultation as to what would best serve the growers and achieve orderly marketing, to determine not later than July 1st the opening dates of the several markets in the Bright Belt, and "to announce and publish such rules and regulations as may in the opinion of the Board best provide for properly and orderly marketing and handling of tobacco on the auction warehouse floors." Under this authority the Board of Governors met prior to July 1st, fixed the dates for the opening of various tobacco marketing belts and announced the rules for handling and marketing tobacco on warehouse floors about which there is no controversy. But subsequently the Board of Governors again met July 20, and adopted the resolution hereinbefore set out that "no warehouse should offer tobacco for sale at auction unless and until an adequate set of buyers as defined above has been assigned to and secured for such sale."

The plaintiff's right to enjoin additional sales of tobacco in Rocky Mount is based upon this resolution of the Board of Governors. Whether the Board of Governors should be held to have exhausted its delegated authority to act after July 1st, or whether the word "should" ought to be regarded as recommendatory rather than mandatory and prohibitive, we need not determine on this record as we are of the opinion that the resolution of June 6-8, 1949, wherein authority was delegated to the Board of Governors to promulgate regulations as to marketing and handling tobacco, was insufficient to give this Board power altogether to prohibit an auction sale of tobacco, otherwise regular and fair and in accord with announced marketing regulations, because of the absence of buyers of either of three named manufacturers.

Since we hold that the regulation contained in the resolution of the Board of Governors July 20, 1949, was beyond its delegated powers, in so far as it attempted to prohibit auction sales of tobacco in defendants' warehouses in excess of the four now permitted, we do not reach the question whether it was an unreasonable regulation, and an infringement upon defendants' rights. Nor, under this view, it being admitted defendants are complying with the other regulations properly determined and announced by plaintiff's Board as to the marketing and handling of tobacco in defendants' warehouse, are the questions as to unreasonable restraint of trade or interference with interstate commerce presented.

No question is raised in this case as to the *bona fides* of the plaintiff Association or that of its Board of Governors.

The plaintiff's suit was to enjoin the defendants from conducting additional sales, as herein defined, for the season of 1949. Since the tobacco selling season for this year has ended, the relief sought by plaintiff in any event would now be nugatory, which would ordinarily leave only a moot question for decision. However, in view of the importance of the questions presented, we have deemed proper to express the Court's opinion on the matters herein discussed.

We conclude upon consideration of the facts pleaded that the restraining order should have been dissolved, and that the order continuing the restraining order to final judgment must be

Reversed.

BARNHILL, J., took no part in the consideration or decision of this case.