W. H. BULLARD et al., Appellants,

v.

AUSTIN REAL ESTATE BOARD,
INCORPORATED, Appellee.

No. 11170.

Court of Civil Appeals of Texas.

Austin.

March 18, 1964.

Rehearing Denied April 1, 1964.

Louis H. Owen, III, Austin, Arthur Mitchell, Austin (on appeal only), for appellants.

Niemann & Babb, Austin, for appellee.

PHILLIPS, Justice.

This case involves the right of a private association to make rules of conduct involving its membership and its right to expel a member for failure to follow the rules.

Appellants, W. H. Bullard as an individual and the First Austin Investment Company of which Bullard is owner, were both members of the Austin Real Estate Board, Inc. The Company's licensed salesmen were also associate members of the Board. Bullard is a licensed Real Estate Broker and was, prior to this controversy, a member of the Board of Directors of the Austin Real Estate Board, Inc.

The Austin Real Estate Board is a voluntary association of licensed real estate brokers and brokerage firms to which membership is by invitation only. Active memberships are limited to individuals or firms owned by indvidual members. In this case First Austin's membership is dependent on the continued membership of appellant Bullard who owns the company.

Among the association's many services is the Multiple Listing Service which is a program created by and administered by the association for the benefit of its members, but not for nonmembers. While Multiple Listing Service has its own rules and regulations, "It is part and parcel of the Austin Real Estate Board and is subject to the constitution and by-laws of the Board." (Article I of the Multiple Listing Service Rules.)

Multiple Listing Service is administered by one of the association's numerous committees under its own printed rules and regulations. When a member obtains an exclusive listing, he has his client fill out and sign the standard printed form which is provided by the Service and required to be used under the rules. (Article VI of the Multiple Listing Service Rules.) The member who submits this contract to the Multiple Listing Service office is called the "listing broker." When submitted, a copy of this contract is distributed to all members of the association. By this medium each member is given an opportunity for procuring a buyer for the property, in which event he is known as "selling broker."

The specific Multiple Listing Service regulations which control the Austin Real Estate Board's Order in question are Articles VIII and V, which are as follows: ·

"ARTICLE VIII—SALES

"The selling broker shall hold the earnest money.

"The selling broker shall in every case consult with the listing broker when an offer is made on a given property. Contact with the owner shall come only through the listing broker in the first instance, unless permission is granted by the listing broker to the selling broker to present directly to the owner. The selling broker may represent the buyer in such negotiations, not necessarily introducing the buyer to the listing broker.

"A copy of the sales contract shall be furnished the listing broker; and the committee on request.

"The selling broker shall arrange for the closing, but the listing broker must be notified of the time and place for the closing.

"ARTICLE V—COMMISSION SPLITS

"The minimum commission on all Multiple Listing Service listings shall be 6%. This commission shall be split ⅓ to the listing broker and ⅔ to the selling broker, unless the listing broker offers a greater percentage of commission to the selling broker, which he may do. This rule shall apply to Realtor-

Owners and Realtor-Builders alike and any rules or regulations now in effect to the contrary are hereby repealed."

A Dr. Casey owned a 20.03 acre tract of land on which two houses were located. Abutting this land was 160 more acres which he also owned. Dr. Casey had in a prior year purchased the 20 acres for $35,000 through Jacob Bauerle and Associates, a farm and ranch brokerage firm in Austin, Texas. Upon deciding to sell this tract, Casey personally contacted Bauerle who came to Casey's residence, at which time they entered into an exclusive-agency, multiple-listing-service contract. Bauerle filed this contract with multiple-listing-service which in turn distributed copies of it to Bullard who was a multiple-listing-service member by virtue of his association membership. The sale price set in this contract was $40,000.

In his letter to the association's president prior to the arbitration hearing, Bullard stated that Dr. Casey had informed Bauerle at the time of the listing agreement that he, Casey, "reserved the right to make a deal directly with W. H. Bullard, or his companies, exclusive of and outside of the multiple listing with Jacob Bauerle." This allegation which was presented to the arbitration committee was also before the trial court in the form of an affidavit, signed by Dr. Casey. At both arbitration and trial, Bauerle testified to the exact contrary, that Bullard's name was never at any time mentioned, and that nothing was ever said about any concurrent negotiations between Bullard and Casey for the purchase of the property. Abner Jones, an associate in Bauerle's firm, who had shown the property on several occasions, also testified at the trial that he had never been told of Casey's alleged exception for Bullard or his companies.

Bauerle's first knowledge of the sale of the tract was a letter from Bullard on December 12, 1962, in which Bullard stated that "Mr. and Mrs. Clifford B. Casey have

traded to my Bullard Company the 20.03 acres on Circle Drive containing two houses, subject to your right under Multiple Listing Contract dated October 18, 1962." Abner Jones was also informed by Bullard of the 20 acre sale for which there was a consideration of $37,500. The 160 acre tract was also sold to the Bullard Company for $17,500. Total consideration for both tracts was $55,000.

Believing he was entitled to one-third of 6% commission as listing broker for the 20 acres, Bauerle made such request to all parties involved in a letter dated December 17, 1962. After a month of waiting and receiving no reply, Bauerle called Joe Perrone, who was president of the association at that time, asking for assistance in settling the dispute. Bauerle also wrote a letter to the new president, Willard Connolly, requesting formal arbitration of this dispute. Perrone attempted to effect an amicable agreement between the two relators as was his usual practice when disagreements between fellow members arose. Bullard's telephone response, as related by Perrone, was as follows:

"No, definitely he would not; that he had no time to take up the thing, and that if Mr. Bauerle had any recourse or wanted any relief, for him to go to the Courthouse, that that is what the Courthouse was for, and as far as he was concerned, he didn't intend to take up any time to come down and have a bunch of Boy Scouts tell him what to do."

Both Bullard and the First Austin Company were notified by letter, dated February 25, 1963, of Bauerle's complaint of nonpayment of commissions and of his request for arbitration thereon. Bullard readily admitted receipt and knowledge of this notification which was in accordance with arbitration procedures under Article XVI of the Austin Real Estate Board's constitution. Bullard was expressly advised of his opportunity to be heard, present witnesses,

documents or any other evidence in his behalf, and to have the assistance of legal counsel for the hearing if he so desired.

The hearing was set for March 12, 1963. On March 11, Bullard wrote to Connolly, informing the president that the arbitration committee had no jurisdiction over the dispute; that no commission was owed by him to Bauerle; that he did not intend to appear at the arbitration proceedings; and that his legal and ethical rights were not subject to arbitration without his specific consent.

Despite Bullard's refusal to recognize its jurisdiction over the controversy, the committee held the hearing as scheduled for the purpose of determining the rights of the parties under the multiple listing service regulations.

Article XVI of the Austin Real Estate Board's constitution prescribes detailed procedural safeguards to assure a fair and impartial hearing for all concerned. Section 2 thereof gives all members a right to arbitration: "If a dispute arises, any party may write to the President stating the facts and request arbitration." Among the requirements set out in the constitution for arbitration are (1) notice to the parties, (2) time for defense, (3) presentation of evidence, (4) a majority of votes for decision, (5) recordation of the hearing (by tape recorder in this case), (6) a written report to the president, containing a statement of facts found, the decision of the committee, and the reasons therefor.

All this was done.

After full consideration of Bullard's letter and the documentary and testimonial evidence presented by Bauerle and other witnesses, the committee made written findings of fact and reached the following decision in their report to the Board:

"WHEREFORE, it is the decision of the Arbitration Committee after hearing all matters presented that, under the Rules and Regulations of the Multiple Listing Service, Jacob Bauerle is the listing broker in the sale of the subject property and entitled to a commission as listing broker and that in accordance with the Rules and Regulations of the Multiple Listing Service member W. H. Bullard should pay member Jacob Bauerle an amount equal to one-third ($\frac{1}{3}$) of a minimum 6% commission on the sale of subject property as a commission to the listing broker in accordance with Article V, Rules and Regulations of the Multiple Listing Service of the Austin Real Estate Board, Inc."

The committee vote was 11 to 0 with one member absent. Copies of their complete report were sent to both Bauerle and Bullard.

Approximately one month after the arbitration hearings the Board of Directors met, and after fully considering the arbitration committee report, issued an order on April 12, 1963, effectuating the committee's recommendation. Copies of the order were sent to both Bullard and Bauerle.

Bullard persisted in his position and refused to abide by the Board order. After ten days lapsed without compliance, Bullard's membership was suspended; after sixty days, his name was dropped from the rolls completely. This action was taken pursuant to Article XVI of the constitution:

"Any member failing to abide by an order or decision of the Board of Directors in a matter of arbitration within ten days after official notice of such order or decision shall automatically be suspended from all rights and privileges of the Board, including the right to advertise as a Board member. If such delinquency continues for sixty days from date of official notice of such order or decision, the member shall be automatically expelled from the Board, with any and all rights and interests therein forfeited and terminated immediately."

From beginning to end, Bullard was fully aware of this provision and the consequence of its violation.

The theory of Bullard's suit, filed in the district court on June 28, 1963, was to restrain and enjoin the Board from "expelling" him from the Association. However, his membership had automatically terminated three weeks before on June 10 by operation of the above quoted provision of appellee's constitution and by-laws.

The trial court granted appellants an ex parte temporary restraining order; however, after a full hearing refused to grant them a temporary injunction and found "that the evidence shows that plaintiff Bullard was accorded procedural due process by defendant Board in that he was given full opportunity to be heard after ample notice of the Board hearing. * * * There is no evidence in the record that the defendant Board acted arbitrarily, capriciously or unfairly or that it was motivated by any improper consideration in making its decision." Bullard then perfected his appeal to this Court.

We affirm the judgment of the Trial Court.

Appellants brief their points of error one through five together which summarized complain that the Trial Court erred in refusing to enjoin the expulsion of appellants in that the expulsion was a violation of the rules of natural justice in that the Austin Real Estate Board failed to abide by the requirements of their constitution and by-laws in expelling appellants; that natural justice was violated in that appellants were automatically expelled by their failure to abide by the decision of the Arbitration Committee; that such automatic expulsion amounted to a denial of a fair hearing; that there was no appeal from the decision of the Arbitration Committee; that the Arbitration Committee did not follow the laws of the State in its distinction between a listing giving an exclusive agency and one giving an exclusive right to sell; that this was evidence of bad

faith on the part of the Arbitration Committee; that the automatic expulsion of appellants amounted to a denial of a fair hearing for the power to expel is judicial in nature and hence requires judicial proceedings.

■ Appellants state the general rule governing cases of this type, that usually a court will not enjoin expulsion proceedings pending before a professional association or its expulsory tribunal, citing Brown v. Harris County Medical Society, Tex.Civ. App., 194 S.W. 1179, no writ history; Hoey v. San Antonio Real Estate Board, Inc., Tex.Civ.App., 297 S.W.2d 214, no writ history; Brotherhood of Railroad Trainmen v. Price, Tex.Civ.App., 108 S.W.2d 239, among others.

Appellants then cite the rule that one of the bases for judicial intervention in these cases is the fact that the expulsion was in violation of the principles of natural justice, citing Brown v. Harris, supra. That the denial of a fair hearing or trial, lack of notice, an inadequate opportunity to be heard or defend one's self or expulsion brought about by bad faith or malice are to be considered as to whether principles of natural justice have been followed.

We have no quarrel with these rules; however, we find that appellants have not been denied any of the principles of natural justice.

In Brown v. Harris County Medical Society, cited above, there had been a "midnight trial" of expulsion on the same date the accused doctor received notice of the complaint against him. The court reversed and remanded the case stating that the general rule:

"* * * the courts never interfere except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society, whether or not it was in good faith, and whether or not there was anything in it in violation of the laws of the land. And that if it is found that the proceeding was

had fairly, in good faith and pursuant to the laws of the society, and that there was nothing in it in violation of the law of the land, then the sentence is conclusive like that of a judicial tribunal."

Or as stated by the Court in Hoey v. San Antonio Real Estate Board, supra:

" 'Courts are not disposed to interfere with the internal management of a voluntary association. The right of such an organization to interpret its own organic agreements, its laws and regulations, after they are made and adopted, is not inferior to its right to make and adopt them. And a member, by becoming such, subjects himself, within legal limits, to his organization's power to administer, as well as to its power to make, its rules. To say that the courts may exercise the power of interpretation and administration reserved to the governing bodies of such organizations would plainly subvert their contractual right to exercise such power of interpretation and administration. * * *' "

In St. Louis Southwestern Ry. Co. v. Thompson, 102 Tex. 89, 113 S.W. 144, the Supreme Court of Texas stated the law to be that whether the members of the order acted fairly and in good faith was a fact question to be decided by a jury. That if the members had acted in good faith in passing on testimony submitted to them as to violations or obligations respecting the constitution or by-laws of the order, then their action would be final and conclusive of the matter.

The Trial Court found that the Austin Real Estate Board had acted fairly and in good faith and the evidence supports this finding.

Section 2, of Article XVI, of the Austin Real Estate Board's Constitution gave Bauerle the right to take his grievance directly to the president in writing and to make request for immediate arbitration.

Nowhere does the constitution say that arbitration must not be used for Multiple Listing Commission controversies. Arbitration was a right of Bauerle's to which appellant Bullard agreed when becoming a member and subjecting himself to the association's constitution. An alternative right was complaint under Article XV of the Multiple Listing Rules entitled "Professional Conduct." However, the only power of the Professional Conduct Committee in respect to Multiple Listing Service Commission disputes is to receive complaints, investigate complaints, arrange for amicable settlements, and if they cannot, to refer the matter to the Board of Directors for appropriate action. There is no provision in the Multiple Listings Service Rules that entitles anyone to a hearing. The then president of the Board, Joe Perrone did, in fact, seek an amicable settlement of the matter only to be rebuffed by appellant Bullard.

The present president of the Board testified that because arbitration is a more thorough and fairer method, all Multiple Listing Service disputes in the past have been taken to the arbitration committee composed of the Board of Directors. We hold that there is nothing incompatible with the procedures concerning the method of handling disputes arising from the Multiple Listing Service branch of the Board and the arbitration procedures of the parent organization, Austin Real Estate Board.

We hold that the procedures followed by the Board and detailed in this opinion afforded appellants an opportunity for a fair and impartial hearing; that in every respect appellants were afforded procedural due process.

Appellants' suit asking the court to enjoin the Austin Real Estate Board from expelling them was not the proper action as they had already been expelled some weeks before the suit was brought. The intent of the Board of Directors in issuing the order was not to expel Bullard et al or to deny them any of their rights of membership. Bullard's loss of membership was

brought upon himself by his own defiance of the Board's ruling.

Appellants seek to ascribe bad faith on the part of the Board and also an erroneous interpretation of the laws of Texas with respect to a listing wherein an exclusive agency was given rather than an exclusive right to sell. That the exclusive agency agreement between Casey, the owner, and Bauerle the agent, does not convey to Bauerle the owner's right to sell, that the owner is free to sell; and if the owner sells, he does not become obligated to pay a commission to anyone. That Bullard in procuring the sale of the property to his Bullard Company was acting only as principal, that is, as buying officer or agent for the Bullard Company, and that therefore he did not owe a commission to anyone.

The Austin Real Estate Board evidently interpreted the arrangement to be that Bullard was both the procuring broker for the sale, that is, "selling broker," as well as buying agent for the Bullard Company, principal. That Bauerle considered himself as "listing broker" and was entitled to the required commission under this arrangement. In this respect it is interesting to note that Bullard Company purchased the Casey property for $37,500 or $2,500 less than the $40,000 price for which Dr. Casey listed it with Bauerle. The 6% commission on this sale would have been $2,400.

Appellant Bullard cites Baker v. Skipworth, Tex.Civ.App., 244 S.W.2d 299, writ refused, for the distinction between a listing giving the exclusive right to sell and one granting an exclusive agency to sell. In the former the commission is due the listing agent regardless of who sells the property; in the latter, the owner does not surrender his own right to sell the property and in the event he does so, he is under no obligation to pay a commission to the broker.

■■ We have no quarrel with the rule announced in Baker v. Skipworth. The suit in that case was in a court of law between an agent and a seller and the legal effect of the agency created therein was pointed out. In the case at bar the rights of the seller are not involved. Only the rights of members who have submitted to the arbitration authority of the Austin Real Estate Board are involved. As stated by this court in Couey v. Arrow Coach Lines, Tex.Civ.

App., 288 S.W.2d 192: "Rules of law applicable to contractual arbitrations are plain and well settled. They require that the arbitration be conducted and determined in accordance with the contract. They forbid an attack on the award made except for fraud, misconduct or such gross mistake as would imply bad faith or a failure to exercise an honest judgment." While the contract between Bauerle and Dr. Casey is apparently an exclusive agency contract at law and the rules of the Multiple Listing Service refer to exclusive right-to-sell listings only, the form of the contract used by Bauerle and Dr. Casey is the only form used by the Austin Real Estate Board for its farm and ranch listings. This is the same form that has been used for many years. Custom and usage of the Board and its members are involved. The rights that this form created among the board members was for the board to determine and technical distinctions of law drawn by the courts do not invalidate the arbitration. No "fraud, misconduct or such gross mistake as would imply bad faith or a failure to exercise an honest judgment" has been shown. Panhandle Grain and Elevator Co. v. Dorsey, Tex.Civ.App., 242 S.W. 255, writ dismissed; Robbs v. Woolfolk, Tex.Civ.App., 224 S.W. 232, writ dismissed; Sanders v. Newton, 57 Tex.Civ.App. 319, 124 S.W. 482, writ refused; Needham v. Blythewood, Tex.Civ.App., 61 S.W. 426; Ferguson v. Ferguson, Tex.Civ.App., 93 S.W.2d 513, writ dismissed.

The Arbitration Committee of the Austin Real Estate Board did not convene to determine Mr. Bauerle's rights to a commission under the laws of the State of Texas, but under the by-laws and constitution of the Board. In arbitrating the dispute between Bullard and Bauerle the Committee was not applying the law of the market place but the standard of conduct and ethics expected by one realtor of another. In a very comprehensive article dealing with the questions of associations in general 76 Harvard Law Review, 1020, we find the following:

"The courts have generally refused, however, to investigate de novo the merits of an association's determination. Such an inquiry normally would be incompatible with the notion of the judicial deference to group autonomy, and insofar as familiarity with the context in which a case arises contributes

to its correct disposition, the association may be assumed to provide a more competent tribunal."

 The members of the Real Estate Board have the right to set their own goals and standards as long as they are not against the public policy of the State. To paraphrase the words of the Court in the Hoey case above, "Bullard, by his assent to the rules of the Real Estate Board, bound himself to abide by all lawful limitations imposed by those rules."

In addition, we hold that the record discloses that Bullard had sufficient notice of the proceeding against him by both letter and personal notification by telephone, that such notice was ample to alert him to the fact that both his personal membership and that of the Bullard Company was in jeopardy.

We also hold that the suit brought by Bullard was premature in that he had failed to exhaust his administrative remedies before the Board. In fact, he refused to avail himself of them altogether.

Appellants' points seven and eight, briefed together, complain that the dispute was the subject matter of arbitration within the procedures governing the Multiple Listing Service and not the Arbitration Committee of the parent organization; that the act of the parent organization in expelling appellants was ultra vires.

While we feel that these points have been answered above, nevertheless we will point out that under Article XV of the Rules and Regulations of the Multiple Listing Service the only authority of the Committee is to "investigate such complaints and may arrange amicable settlements of same if such appears appropriate; if not then such complaints shall be referred to the Board of Directors for appropriate action." It takes two parties to arrange an amicable settlement. By his own conduct Bullard foreclosed this avenue. As stated above, Mr. Perrone attempted to bring about an amicable settlement only to be rebuffed. Final action was taken by the Board of Directors as the rules of the Multiple Listing Service prescribe.

The judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

It is my opinion that the only basis upon which the expulsion of appellants can be sustained is their failure to abide by the award of the Arbitration Committee.

The Rules and Regulations of the Austin Multiple Listing Service provide that, "Only exclusive right-to-sell listings shall be processed by the Service. * * *" It is undisputed that the listing upon which the Arbitration Committee based its award is not of the type specified by the rules. The listing involved should not have been "processed by the service." It could not, under the facts here, form a legal claim for a commission by Bauerle.

It is my opinion that the award of the Committee is based upon a mistake which is gross and palpable and vitiates its award. See Arbitration and Award, 6 Tex.Jur.2d, Sec. 65, p. 88.

It is my opinion that appellants were entitled to a temporary injunction reinstating them as members of the Austin Real Estate Board, Inc., pending final determination of this controversy.