GASTON BOARD OF REALTORS, INC., A NORTH CAROLINA CORPORATION v. CHARLES A. HARRISON

No. 8227SC642

(Filed 20 September 1983)

**1. Declaratory Judgment Act § 3— action involving actual controversy—denial of motion to dismiss proper**

The trial court properly failed to dismiss plaintiff's declaratory judgment action on the basis of a lack of a case or controversy between the parties since the evidence tends to show that plaintiff intended to expel defendant from its membership as soon as the legality of the expulsion hearings were established, and since defendant stated in a letter to plaintiff that expulsion would deprive him of his rights under the law, and that he would take action to protect himself.

**2. Brokers and Factors § 8— expulsion from private real estate board**

There was no merit to defendant's contention that a private real estate board's case had been pre-empted by State action in creating the North Carolina Real Estate Licensing Board since there is no language in the real estate licensing statutes that can be construed as pre-empting reasonable self-regulation by private real estate boards. G.S. 93A-1 et seq.

**3. Brokers and Factors § 8; Constitutional Law § 23— expulsion from board of realtors—no entitlement of substantive due process review**

In a declaratory judgment action brought by plaintiff board of realtors in which plaintiff sought a judgment that the hearings in which it expelled defendant had not violated defendant's rights, the trial court did not err in failing to review the substantive aspects of plaintiff's decision to expel defendant. Defendant had no substantive due process right to membership in the plaintiff's organization since the relationship between a private voluntary association and its members is contractual in nature and defendant's substantive rights are derived solely from his contract with plaintiff. Art. I, § 19 of the North Carolina Constitution and XIV Amendment to the U. S. Constitution.

**4. Brokers and Factors § 8; Constitutional Law § 24.1— expulsion from local real estate board—necessity for procedural due process**

Given the fact that expulsion from a local real estate board may harm a defendant professionally and economically, such an expulsion must be done with some procedural due process. The procedures followed by plaintiff real estate board were adequate to protect defendant's constitutional rights where

defendant received timely notice of the complaint, was given an opportunity to present evidence and cross-examine opposing witnesses, and was represented by counsel.

Judge JOHNSON dissenting.

APPEAL by defendant from *Owens, Judge.* Judgment entered 28 January 1982 in Superior Court, GASTON County. Heard in the Court of Appeals 22 April 1983.

Plaintiff brought this action seeking a declaratory judgment that it had conducted disciplinary proceedings against defendant in a lawful manner. Plaintiff, a voluntary trade association, had conducted hearings to determine if defendant, a realtor, violated its Code of Ethics in refusing to return a $2,090.00 deposit to Mr. and Mrs. Hamrick, prospective home buyers. The hearings were conducted in accordance with plaintiff's written procedures. Defendant received notice of the complaint, presented evidence, cross-examined witnesses, and was represented by counsel. Plaintiff decided to expel defendant from its membership until he repaid the disputed deposit to his former clients.

Plaintiff suspended its decision to expel defendant until it obtained a declaratory judgment that the hearings had not violated defendant's rights. The declaratory judgment was sought because defendant had stated, "I plan to take such actions as are necessary to protect myself . . . from harm by the actions of individuals involved in this matter." Both the plaintiff and the trial court construed this as a threat to take action and grounds for a declaratory judgment.

After making findings of fact and conclusions of law, the trial court declared that plaintiff had rendered due and proper process to the defendant, and could proceed with its disciplinary action.

*Mullen, Holland & Cooper, by Graham C. Mullen and William E. Moore, Jr., for plaintiff appellee.*

*Lloyd T. Kelso for defendant appellant.*

*Attorney General Edmisten, by Assistant Attorney General Harry H. Harkins, Jr. and Thomas R. Miller, for North Carolina Real Estate Licensing Board, amicus curiae.*

*Smith, Moore, Smith, Schell & Hunter, by Richmond G. Bernhardt, Jr. and Peter J. Covington, for North Carolina Association of Realtors, Inc., amicus curiae.*

PHILLIPS, Judge.

[1] Defendant first contends the trial court should have dismissed the declaratory judgment action due to lack of a case or controversy between the parties. Whether an actual controversy exists must be determined on the facts of each case, but reported decisions do provide some guidelines. Declaratory judgment actions must focus on real and present problems; they must adjudicate the rights, status, or other legal relations of antagonistic litigants. *Adams v. N.C. Dept. of N.E.R. and Everett v. N.C. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E. 2d 402 (1978). Additionally, "it is necessary that the Courts be convinced that the litigation appears to be unavoidable." (Citation omitted.) *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 450, 206 S.E. 2d 178, 189 (1974).

The controversy in the present case is whether expulsion proceedings have been conducted against defendant without violating his legal rights. The controversy is real and present because (1) plaintiff intends to expel defendant as soon as the legality of the hearings is established; and (2) defendant stated in a letter to plaintiff that expulsion would deprive him of his rights under the law, and that he would take action to protect himself. The present declaratory judgment action clearly adjudicates the rights of antagonistic litigants. Defendant's threat to take action is substantial evidence that litigation appeared unavoidable. Consequently, we hold the declaratory judgment action did involve an actual controversy, and the trial court correctly denied defendant's motion to dismiss.

[2] The defendant's contention that the plaintiff's case had been pre-empted by State action in creating the North Carolina Real Estate Licensing Board, which has taken no action against him, is likewise without merit. The lack of action by the North Carolina Real Estate Licensing Board relates to defendant's qualifications for a state license and is distinct from the right of a voluntary association to regulate conduct of its members. There is no language in the real estate licensing statutes that can be construed as pre-empting reasonable self-regulation by private real estate boards. G.S. 93A-1 *et seq.*

Defendant next contends the trial court erred in denying defendant's Rule 12(b)(6) motion to dismiss without making find-

ings of fact. The order denying defendant's motion to dismiss shows that the trial court considered matters outside the pleadings. Consequently, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ." Rule 12(b), N.C. Rules Civil Proc. Rule 56(d) states that if summary judgment is not rendered on the whole case, then the trial court shall, "if practicable," ascertain what material facts exist without substantial controversy, and shall make an order specifying those facts. Defendant has not shown that it was practicable for the trial court to find what facts were uncontroverted. Since defendant did not even file an answer until a week before the trial court ruled on the motion to dismiss, the trial court's refusal to make premature findings of fact is understandable and consistent with the requirements of Rule 56.

[3]   Defendant also contends the trial court erred in not reviewing the substantive aspects of plaintiff's decision to expel him. Defendant claims he is entitled to substantive due process review because expulsion from the plaintiff organization would harm his right to pursue his occupation.

The Fourteenth Amendment of the United States Constitution expressly requires due process of law when a state deprives a person of property. However, private action does not require due process even though it may involve a business subject to extensive state regulation. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 42 L.Ed. 2d 477, 95 S.Ct. 449 (1974). In distinguishing between state and private action, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." (Citation omitted.) *Id.* at 351. The disciplinary proceedings brought by plaintiff were intended to maintain high integrity and professionalism among Gaston County realtors through enforcement of the plaintiff's Code of Ethics. The Code of Ethics and proceedings against defendant do not involve state action since they serve the interests of plaintiff and not, in any direct manner, the State. Defendant's expulsion did not occur pursuant to state law or at the request of the State. There was no joint venture between plaintiff and the State. Consequently, defendant has no claim to Fourteenth Amendment due process.

Though the law of the land clause in Article I, § 19, of the North Carolina Constitution is synonymous with Fourteenth Amendment due process—*Bulova Watch Co., Inc. v. Brand Distributors of North Wilkesboro, Inc. and Bulova Watch Co., Inc. v. Motor Market, Inc.*, 285 N.C. 467, 206 S.E. 2d 141 (1974)—federal court interpretations of due process, though highly persuasive, are not binding on North Carolina courts. *Id.* Thus an independent determination of defendant's constitutional rights under the law of the land provision must be made.

Defendant has no substantive due process right to membership in the plaintiff organization, and therefore the trial court properly refused to review all the substantive aspects of defendant's expulsion. The relationship between a private voluntary association and its members is contractual in nature. *Bright Belt Warehouse Assn., Inc. v. Tobacco Planters Warehouse, Inc.*, 231 N.C. 142, 56 S.E. 2d 391 (1949). Defendant's substantive rights are derived solely from his contract with plaintiff. By virtue of his membership, defendant is deemed to have consented to all reasonable rules of plaintiff. *Id.* Plaintiff's Code of Ethics and disciplinary procedures are terms of the contract between plaintiff and defendant. Accordingly, defendant's expulsion is subject to judicial review to determine, first, that the contract terms were not contrary to public policy, *Gore v. Ball, Inc.*, 279 N.C. 192, 182 S.E. 2d 389 (1971), and, second, that the expulsion was conducted according to plaintiff's rules which are the terms of the contract with defendant. The trial court conducted this scope of judicial review when it declared that plaintiff acted within its rights and followed its rules in conducting disciplinary proceedings against defendant.

[4] The trial court also declared that plaintiff had rendered due process in disciplining defendant. Defendant contends he did not receive due process because he lacked subpoena power and he received inadequate notice. We agree that defendant deserved some degree of procedural due process. Expulsion from plaintiff organization may harm defendant professionally and economically. He will lose the right to use the established trade name of "realtor," as well as access to the plaintiff's Multiple Listing Service, a valuable instrumentality in the sale of real estate. Given these adverse effects on defendant's standing and business, his expulsion must be done with some procedural due process.

Without attempting to define how much due process is due, we hold the procedures followed by plaintiff were adequate to protect defendant's constitutional rights. Defendant received timely notice of the complaint, was given an opportunity to present evidence and cross-examine opposing witnesses, and was represented by counsel. The hearing panel consisted of impartial persons. Subpoena power, which is part of the state's police power not available to private associations, and formal rules of evidence are not constitutionally required by private disciplinary proceedings. Although defendant claims the notice he received misled him as to what was the complaint, a letter from plaintiff to defendant expressly referred to the actual complaint. Defendant received notice that enabled him to fully respond to the complaint. The trial court properly declared that defendant had been accorded procedural due process.

Decisions in other jurisdictions are in accord with the scope of review set forth in the case *sub judice. Bullard v. Austin Real Estate Board, Inc.*, 376 S.W. 2d 870 (Tex. Civ. App. 1964), affirmed the expulsion of a real estate broker from a local real estate board, where the board's rules were followed and the rules satisfied procedural due process. The court observed that a voluntary association can set its own standards as long as they are not contrary to public policy, and that those standards contractually bind members.

In *Multiple Listing Service of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc.*, 390 So. 2d 982 (Miss. 1980), suspension of a realtor was affirmed where disciplinary proceedings were in conformity with board bylaws and procedural due process was given. The court noted that a private association can set its own standards as long as they are not against public policy.

*Kendler v. Rutledge*, 78 Ill. App. 3d 312, 396 N.E. 2d 1309 (1979), involved a declaratory judgment action by a real estate broker to challenge sanctions imposed on him by a local real estate board. The court stated it would not substitute its judgment for that of the board since associations should have considerable discretion to conduct their internal affairs; however, the court did review the board action to determine that it followed its own rules and gave fair hearing rights in disciplining the broker.

*Cunningham v. Burbank Board of Realtors,* 262 Cal. App. 2d 211, 68 Cal. Rptr. 653 (1968), held that a member of a real estate board was entitled to a hearing on charges leading to expulsion, and that the hearing must be conducted in accordance with the rules of the board and the law of the land.

Since the proceedings in this case were fairly conducted in accordance with rules that do not violate public policy, the judgment appealed from is

Affirmed.

Judge HILL concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

I am troubled by the majority's opinion in a number of respects, but most of all by that portion which holds that the law of the land clause in Article I, § 19 of the North Carolina Constitution guarantees a member of a private voluntary association "procedural due process" when that association undertakes disciplinary proceedings pursuant to its by-laws or rules of membership. In my opinion, such a novel departure in our constitutional jurisprudence is wholly unnecessary to decide the merits of this appeal and unwise as a matter of constitutional law and public policy. Furthermore, after having initially concluded that the defendant in this case has no *substantive due process* right to membership in the plaintiff organization, the majority reasoned that, nevertheless, defendant is entitled to *procedural due process* when that organization seeks his expulsion, noting that expulsion may harm the defendant professionally and economically. It would appear that either the law of the land clause of the North Carolina Constitution mandates that defendant is entitled to *both* procedural and substantive due process in a case such as this, or that he is entitled to none at all. However, it is impossible to separate the two aspects of the due process guaranty of "fundamental fairness," and, in my opinion, the guarantees of the law of the land clause simply do not apply when a private organization seeks to expel one of its members.

Art. I, § 19 of the North Carolina Constitution states:

No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, or religion, or national origin.

Noticeably absent from the language of the law of the land clause is the phrase "by the State," which is contained in both the equal protection clause of Art. I, § 19 and, by similar language, in the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, giving rise to the "state action" requirement. However, my research has disclosed no prior North Carolina decision in which Art. I, § 19 has been interpreted to bind private citizens in their relations with one another. *See e.g. State v. Avent*, 253 N.C. 580, 118 S.E. 2d 47 (1961), *vacated on other grounds*, 373 U.S. 375, 10 L.Ed. 2d 420, 83 S.Ct. 1311 (1963). Moreover, in the case of private associations, such an interpretation would give rise to serious constitutional questions regarding freedom of association under the First and Fourteenth Amendments to the United States Constitution.

As a preliminary matter, there is some doubt in my mind as to whether the defendant's threat to take action to protect himself creates a controversy sufficient to invoke jurisdiction of the court under the declaratory judgment statutes. Section 20(i) of the plaintiff's Code of Ethics and Arbitration Manual states that, "A decision of the Directors is final and each member by becoming and remaining a member agrees not to seek review in any court of law." For purposes of the declaratory judgment act, a "controversy" exists, and jurisdiction will lie, where the court is convinced that litigation appears to be unavoidable. *Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 206 S.E. 2d 178 (1974). Inasmuch as defendant is actively seeking to *retain* his membership in plaintiff association, it would appear that the likelihood of defendant seeking judicial review of the Board's decision, at the cost of his membership, is significantly diminished by Section 20(i).

Furthermore, the admitted factual basis for defendant's expulsion is the defendant's alleged failure to comply with his contract of 23 October 1978 with the Hamricks. Specifically, because of his failure to make "full restitution" to the Hamricks of their $2,090.00 down payment. Thus, resolution of the dispute between plaintiff and defendant turns, as a factual matter, almost exclusively on the question of whether or not defendant breached his contract with the Hamricks. If defendant did not breach the 23 October 1978 contract, he was entitled by its terms to retain the Hamricks' down payment, or at least that portion of the deposit which represents the costs defendant incurred in attempting to procure the loan. Subsequent to the filing of the declaratory judgment, but prior to the hearing before Judge Owen, defendant filed an interpleader action against the Hamricks (*Harrison Realty of Gastonia, Inc. v. General Homes Corp., and Larry E. Hamrick and Phyllis M. Hamrick,* 81CVD 2662). Pursuant to that action, defendant deposited the disputed $2,090.00 sum with the Clerk of Superior Court, Gaston County. The payment to the clerk in the interpleader action is irrevocable. Therefore, the issue of whether the Hamricks or the defendant breached the contract, and whether restitution is due, was before a court of competent jurisdiction. The hearing panel's recommendation, adopted by the Board, stated that defendant be "expelled from membership until such times as he makes full restitution to the Complainants, Larry E. Hamrick and Phyllis M. Hamrick, at which time he may be automatically reinstated." In his brief, defendant argues that the outcome of the subsequent interpleader action will render moot the question presented by plaintiff's complaint in this action, that is, whether "plaintiff's decision to expel the defendant is lawful and proper."

Assuming for the moment that our courts do have subject matter jurisdiction to review the Board's decision, in my view, a proper review must at least encompass a determination that the decision was rational, that is, reasonably related to the legitimate professional purposes of the Board, and not contrary to public policy. Should it be determined in the interpleader action that defendant is not legally obligated to make restitution to the Hamricks, I would be unable to conclude that the Board's substantive decision to expel defendant *until* he made such restitution was a rational one, which was, therefore, "lawful and proper."

These considerations may not necessarily render the question of whether the Board properly followed its own disciplinary procedures in this case moot, but an adjudication of defendant's rights under his contract with the Hamricks would certainly answer the factual question before the Board and the court. Therefore, the better procedure to follow in a case such as this would be to retain jurisdiction of the declaratory judgment action pending the outcome of defendant's interpleader action against the Hamricks.

Returning to the question of subject matter jurisdiction, it would appear that the larger questions presented by this appeal concern the legal basis for the defendant-member's right to judicial review of the acts of plaintiff-professional association and the degree to which the courts of this state may intervene in the internal affairs of a private professional association. The traditional theories for judicial review of disputes involving associations are extensively discussed in *Developments in the Law, Judicial Control of Actions of Private Associations,* 76 Harv. L. Rev. 983, 998-1006 (1963). These include: (1) the deprivation of a property interest; (2) the existence of a consensual relationship between the member and the group, the group's rules serving as the terms of a contract; (3) the fiduciary duties of associations to both members and non-members; and (4) tort theories which focus on the group decision's impact on the member's reputation and its interference with advantageous economic relations. In *Bullard v. Austin Real Estate Board, Inc.,* 376 S.W. 2d 870 (Tex. Civ. App. 1964), cited by the majority, the court stated that one of the bases for judicial intervention in expulsion proceedings before a professional association is the fact that an expulsion was in "violation of the principles of natural justice." 376 S.W. 2d at 874. *See also* Tobriner & Grodin, *The Individual and the Public Service Enterprise in the New Industrial State,* 55 Cal. L. Rev. 1247, 1251-1254 (the proper legal basis for judicial intervention is the "status" relationship between the individual and a "public service" enterprise).

Although there is a divergence of opinion as to the precise legal basis for judicial intervention, there is a general agreement that membership in a professional society, trade or business association, including a board of real estate brokers, is a valuable right, and such membership cannot be terminated or interfered

with contrary to the fundamental requirements of the common law. *See e.g. Cunningham v. Burbank Board of Realtors,* 68 Cal. Rptr. 653, 262 Cal. App. 2d 211 (1968); *Swital v. Real Estate Commissioner,* 116 Cal. App. 2d 677, 254 P. 2d 587 (1953); *McCune v. Wilson,* 237 So. 2d 169 (Fla. 1970); *Multiple Listing Service of Jackson, Inc. v. Century 21 Cantrell Real Estate,* 390 So. 2d 982 (Miss. 1980). *See also* Chaffee, *The Internal Affairs of Associations Not for Profit,* 43 Harv. L. Rev. 993, 1021-1029 (1930) (there are four basic policies to consider when determining whether judicial interference in the affairs of a particular type of association is warranted: the Strangle-hold Policy, the Dismal Swamp Policy, the Hot Potato Policy, and the Living Tree Policy; the first favors intervention, the last three weigh against it).

There is also general agreement that the need for group autonomy from unwarranted judicial intrusion and the desirability of group self-regulation mandates limiting the scope of judicial review generally to the enforcement of the association's own rules and to questions involving the basic fairness of the procedure whereby the member was disciplined. *See e.g. Cunningham v. Burbank Board of Realtors, supra; McCune v. Wilson, supra; Terrell v. Palomino Horse Breeders of America,* 414 N.E. 2d 332 (Ind. App. 1980).

In *Pinsker v. Pacific Coast Society of Orthodontists,* 12 Cal. 3d 541, 116 Cal. Rptr. 245, 526 P. 2d 253 (1974), the California Supreme Court reasoned that professional associations which wield monopoly power and affect sufficiently significant economic and professional concerns are clothed with a "public interest," even though it cannot be said that membership is a strict "economic necessity." The court, following a thorough review of common law precedents in this area, concluded that the overriding principle is that "once it is determined the judicial scrutiny of a particular decision is justified to protect against arbitrary action, such overview includes an evaluation of both the substantive and procedural aspects of the association's decision." 526 P. 2d at 261. In other words, the proscription of "arbitrary" expulsions or rejections prohibits such actions pursuant to unfair procedure as well as actions based on irrational or improper reasons. *Accord Dietz v. American Dental Association,* 479 F. Supp. 554 (E. D. Mich. 1979). In *Dietz,* the court stated the rule as follows:

Where a professional association has monopoly power and membership in the association significantly affects the member's practice of his profession, courts will hold the association has a fiduciary duty to be substantively rational and procedurally fair. The association must exercise its powers according to its by-laws and constitution; it cannot decide to exclude or expel a member or deny rights of membership for arbitrary, capricious, or discriminatory reasons. (Citations omitted.)

479 F. Supp. at 557.

The defendant in this case is alleged to have violated Article 3 of plaintiff's Code of Ethics by his failure to return the Hamricks' deposit. Article 3 states, in pertinent part:

It is the duty of the REALTOR to protect the public against fraud, misrepresentation, and unethical practices in real estate transactions.

In my opinion, the trial court failed to conduct a proper judicial review of the substantive rationality of the Board's decision. Such a determination would, of course, either be made simpler or would be completely obviated by the resolution of the interpleader action between defendant and the Hamricks. The rule that a court should not reweigh the facts and substitute its judgment for that of the association, implicit in the majority opinion, is not directly applicable to this case. The rationale for this rule is to prevent the court from deciding certain types of issues which are best left to the membership of the association whose competence exceeds the court's with regard to that particular issue. *See Pinsker, supra; Blende v. Maricopa County Medical Society,* 96 Ariz. 240, 393 P. 2d 926 (1964). Professor Chaffee, in his seminal article on private associations, has characterized judicial review in such cases (e.g. intra-church disputes) as "an appeal from a learned body to an unlearned body," and hasty judicial intervention as an eager rush into the "Dismal Swamp of obscure rules and doctrines." 43 Harv. L. Rev. at 1024. Certainly a higher degree of judicial scrutiny of association decisions is justifiable and permissible when the question is whether a breach of a real estate contract constituted a violation of Article 3 of the plaintiff's Code of Ethics. In view of the substantial economic control the Board exerts over this defendant's ability to practice his

profession, the Board owes him a fiduciary duty and he is, therefore, entitled to a judicial determination that the Board's substantive decision was based upon substantial evidence, was rational, that is, reasonably related to legitimate professional purposes of the Board, was made in good faith, and was not contrary to public policy.

In conclusion, the proper legal basis for judicial review of the decision of plaintiff Board to expel defendant from membership lies in the common law rule that such private professional associations must refrain from arbitrary action and the proper scope of judicial review that the action taken or proposed is both substantively rational and procedurally fair. The trial court refused to consider evidence relative to the substantive rationality of the Board's decision and made no findings or conclusions on that issue. For this reason, I would vacate the court's judgment and remand the case to the trial court for a new trial.