MAITLAND v WAYNE STATE UNIVERSITY

1. MANDAMUS—STATE OFFICIALS—COURT OF APPEALS—JURISDICTION—STATUTES—COURT RULES.

   Mandamus against a state official is within the exclusive jurisdiction of the Court of Appeals (MCLA 600.4401; MSA 27A.4401, GCR 1963, 714.1[1]).

2. COURTS—CIRCUIT COURTS—JURISDICTION—EQUITY—COLLEGES AND UNIVERSITIES—DISMISSAL OF STUDENT.

   A circuit court has equity jurisdiction of a case in which a dismissed university student seeks reinstatement where the specific areas of relief sought involve either disputed questions of the legal duty owed by the university or matters concerning the university's discretion.

3. COLLEGES AND UNIVERSITIES—DISMISSAL OF STUDENT—JUDICIAL REVIEW.

   The standard of judicial review of a university's dismissal of a student is whether the actions of the university were so arbitrary or capricious as to warrant the court's interference in the matter.

4. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW—FINDINGS OF TRIAL COURT.

   Review of equity matters by the Court of Appeals is *de novo;* however, that review is limited by the deference given by appellate courts to the factual decisions of trial judges.

5. COLLEGES AND UNIVERSITIES—DISMISSAL OF STUDENT—FINDINGS OF TRIAL COURT—ARBITRARINESS—CAPRICIOUSNESS.

   A finding by a trial court that a university had acted arbitrarily

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur 2d, Mandamus §§ 22–24, 26, 27.

[2, 3] 52 Am Jur 2d, Mandamus § 248.

[3] 52 Am Jur 2d, Mandamus § 162.

[4] 5 Am Jur 2d, Appeal and Error § 822.

[5, 6] 15 Am Jur 2d, Colleges and Universities §§ 26, 27.

   52 Am Jur 2d, Mandamus §§ 248, 249.

   Right of student to hearing on charges before suspension or expulsion from educational institution. 58 ALR2d 903.

and capriciously in dismissing a student from its medical school is not clearly erroneous where there was evidence to support a finding that there had been irregularities in a testing procedure which had not been adequately dealt with and where several other students who had lower test scores than the plaintiff, the dismissed student, were allowed to take a second examination on which the passing score was lower than the plaintiff's original score.

6. COLLEGES AND UNIVERSITIES—DISMISSAL OF STUDENT—ARBITRARY DECISION—REMEDIES.

The preferred remedy where a trial court finds that a university has made an arbitrary decision regarding a student's appeal of his dismissal is to refer the matter to the school for a fair hearing on the appeal.

Appeal from Wayne, Myron H. Wahls, J. Submitted May 12, 1977, at Detroit. (Docket No. 30223.) Decided July 7, 1977.

Complaint by Conrad C. Maitland against Wayne State University seeking an injunction to prevent the defendant from terminating the plaintiff from its roster as a student in good standing at Wayne State University Medical School, and other relief. Judgment for plaintiff. Defendant appeals. Affirmed.

*Hall & Andary, P. C.,* for plaintiff.

*Byron H. Higgins* and *Karl Reibel,* Office of General Counsel, for defendant.

Before: BASHARA, P. J., and QUINN and BEASLEY, JJ.

BASHARA, P. J. Plaintiff Conrad Maitland sued in Wayne County Circuit Court seeking reinstatement as a student in good standing at defendant Wayne State University Medical School. In an

order dated August 2, 1976, reinstatement was granted and defendant appeals.

The facts of the case are complicated and critical to the ultimate disposition of the matter. The first two years of defendant's medical school are divided into several distinct sections, or "units". At the end of each unit an examination is given on that subject matter. At the end of each year a comprehensive examination is given. In order for a student to successfully complete each year two requirements must be met. First, the student must pass each unit, either on the individual unit exam or the portion of comprehensive exam covering that unit. Second, the student must achieve an overall passing grade on the final comprehensive exam.

Procedures for review of the grading and promotion decisions involve two committees. A Year Committee for each academic year, consisting of faculty members from each unit, composes the final exam and recommends a pass/fail score. The Promotions Review Committee (PRC), consisting of faculty with student members acting in an advisory capacity, reviews the recommendations of the Year Committee and listens to individual appeals. The PRC has the authority to allow students to retake either the entire year or the final examination. The PRC may hold a hearing and allow the student to bring forth evidence bearing upon the committee's decision.

The present controversy concerns plaintiff's second attempt to pass the year 2 final exam. The test was scheduled to be given in five separate sections over the course of 2-1/2 days. The second year class was divided into two classrooms for the test. On the first morning of the test the proctors in the classroom to which plaintiff was assigned

began to pass out the wrong section of the exam. While the estimates of the witnesses varied as to numbers and time, it appears that a significant number of students in that classroom had access to the second part of the test for 5–20 minutes. Plaintiff did not receive the wrong portion of the test.

The passing grade was set by the Year 2 Committee at 453. Plaintiff's score was first graded as 426. The Year 2 Committee recommended that plaintiff be dropped as a student. The PRC approved and plaintiff was informed of the decision. Shortly thereafter an error was discovered in the grading process and plaintiff's score was reevaluated as 446. The Year 2 Committee again decided that plaintiff should be dropped. Plaintiff appealed to the PRC, who decided that plaintiff would not be allowed to retake the year 2 final exam. Plaintiff was again informed that he had been removed from the list of active students.

Two weeks later plaintiff instituted the present lawsuit. During the course of the hearing on this matter it became evident that the decision of the court would probably not be made prior to the scheduled date of the retake exam. The parties agreed that plaintiff, and two intervening plaintiffs,[1] be allowed to take the retake exam and have their grades sealed until the final determination by the court. However, over the objection of defendant, plaintiff was permitted to retake only part II of the test, which had been erroneously passed out at the original exam.

The court found that defendant had acted arbitrarily and capriciously in deciding to dismiss plaintiff. The test results were opened and plaintiff

---

[1] The two intervening plaintiffs are not parties to the present appeal.

was found to have achieved an overall passing grade on the final exam given the inclusion of the new part II score. Over defendant's objection that plaintiff had still not demonstrated proficiency in one of the units the court ordered the defendant to promote plaintiff to the standing of a third year student.

Defendant raises several issues on appeal. The first deals with the jurisdiction of the trial court to hear the present lawsuit. Defendant claims that plaintiff was in fact seeking mandamus relief, a remedy within the exclusive jurisdiction of this Court. See MCLA 600.4401; MSA 27A.4401, GCR 1963, 714.1(1). *Mount Clemens Harness Association v Racing Commissioner,* 360 Mich 467; 104 NW2d 363 (1960), *Minarik v State Highway Commissioner,* 336 Mich 209; 57 NW2d 501 (1953). We hold that the trial court had jurisdiction to hear the present case.

Defendant contends that plaintiff sought mandamus relief under language couched in terms of injunctive relief. Plaintiff's complaint spoke of several areas of relief. He sought an emergency and temporary injunction barring the school from terminating his position on the roster of active students, an injunction compelling the school to give him his accurate grade on the exam, an order allowing him to retake part II of the exam, a full hearing on his reinstatement, and monetary damages. Of these requests only one, the injunction compelling the school to give plaintiff his correct grade, can be said to fit under the definition of an action in mandamus.

Defendants had a clear legal duty to credit plaintiff with his correct numerical grade. *Hessee Realty Inc v City of Ann Arbor,* 61 Mich App 319, 322; 232 NW2d 695 (1975). However, this prayer

for relief became moot since defendant's revised score had already been determined. The other relief sought involved either disputed questions of the legal duty involved or matters concerning the defendant's discretion. As such these issues fell under the trial court's equity jurisdiction. See *Civil Service Commission v Secretary of State,* 379 Mich 613; 154 NW2d 451 (1967); *Lobaido v Detroit Police Commissioner,* 15 Mich App 138; 166 NW2d 515 (1968).

Defendant claims that the trial court erred in finding that the actions of the review committees were arbitrary and capricious. The underlying question implicit in defendant's argument is the scope of judicial review of academic decisions made by a public school's administrators and faculty. Our research of relevant law in this area reveals no Michigan case directly on point. Several decisions from other jurisdictions are well-reasoned and persuasive.

In *Connelly v University of Vermont,* 244 F Supp 156, 159 (D Vt 1965), the court discussed the standard of judicial review in a case factually similar to the present action:

"Where a medical student has been dismissed for a failure to attain a proper standard of scholarship, two questions may be involved; the first is, was the student in fact delinquent in his studies or unfit for the practice of medicine? The second question is, were the school authorities motivated by malice or bad faith in dismissing the student, or did they act arbitrarily or capriciously? In general, the first question is not a matter for judicial review. However, a student dismissal motivated by bad faith, arbitrariness or capriciousness may be actionable."

In *Greenhill v Bailey,* 519 F2d 5, 7 (CA 8, 1975), the Eighth Circuit Court of Appeals outlined the

policy rationale behind limited judicial intervention in academic decision processes.

"It is true that courts will ordinarily defer to the broad discretion vested in public school officials and will rarely review an educational institution's evaluation of the academic performance of its students. Notwithstanding this customary 'hands-off' policy, judicial intervention in school affairs regularly occurs when a state educational institution acts to deprive an individual of a significant interest in either liberty or property. It is well established that when such a deprivation occurs the procedural safeguards embodied in the Fourteenth Amendment are called into play, and courts will not hesitate to require that the affected individual be accorded such protection." (Citations omitted.)

Numerous other jurisdictions have limited judicial review to the issues of whether the school's actions in dismissing or failing the student were arbitrary, capricious, in bad faith, or a denial of procedural due process.[2]

In the present case the court applied the appropriate standard. In his opinion and findings of fact, the trial judge held:

"Then the question becomes, is what the University did in response to established substantial irregularities in the administration of the examination so arbitrary and capricious as to warrant this Court's interference in the matter? The Court is of the opinion that it is, and is of that opinion because every decision that was made thereafter was not made based on what I think is fairness to those people who were affected by the examination. There was no attempt to obtain any knowledge about it that might have been helpful, and as a conse-

---

[2] See Barnard v Inhabitants of Shelburne, 216 Mass 19; 102 NE 1095 (1913), Frank v Marquette University, 209 Wis 372; 245 NW 125 (1932), People ex rel Bluett v Board of Trustees of University of Illinois, 10 Ill App 2d 207; 134 NE2d 635 (1956), Edde v Columbia University, 8 Misc 2d 795; 168 NYS2d 643 (1957).

quence each decision that was made was in fact arbitrary."

Our review of the trial court's factual finding that the defendant's actions were arbitrary and capricious is limited by the traditional deference given by appellate courts to the factual decisions of trial judges. GCR 1963, 517.1, *Tuttle v Department of State Highways,* 397 Mich 44; 243 NW2d 244 (1976). This applies equally in equity suits where this Court's review is *de novo. Greenspan v Rehberg,* 56 Mich App 310, 319; 224 NW2d 67 (1974).

The trial judge indicated two major reasons why he found defendant's actions to be arbitrary. First, and foremost, the court found that the review committees failed to adequately investigate the possibility that the irregularities in administering the final exam could have affected the pass/fail point to plaintiff's detriment.

The chairman of the PRC testified that when he learned of the mistake in passing out the tests he ordered a statistical analysis of the test to determine if any discrepancies in scores resulting from the error could be found. While the analysis was done, and apparently reveals no discrepancies, the results of that survey were not available to the PRC until it had twice ruled on plaintiff's appeals. Although the PRC did consider the error in the test procedure, we cannot say that the trial judge's finding that the committee's actions in the face of the irregularities were inadequate was clearly erroneous or unsubstantiated by the record.

Second, the court found it significant that several students who scored lower than plaintiff on the original test were allowed to take the retake exam, some without having to appeal, and that the

passing grade on the retake exam was set at a percentage lower than plaintiff's grade on the original test. While we appreciate that many factors beyond bare numerical scores go into the decision to allow a student to retake an exam or year of study, we do not find erroneous the trial court's consideration of the above facts in support of his finding.

The final issue involves the remedy utilized by the trial court. Defendant contends that allowing plaintiff to retake only part II of the exam, and then ordering plaintiff promoted to the third year on the basis of his amended score, constituted unwarranted judicial interference with the school's academic process.

The case law previously cited supports defendant's argument. The preferred remedy where a trial court finds an arbitrary decision is to refer the matter to the school for a fair hearing on the student's appeal. In *Connelly v University of Vermont, supra,* the court, while denying defendant's motion for summary judgment, held:

"The rule of judicial nonintervention in scholastic affairs is particularly applicable in the case of a medical school. A medical school must be the judge of the qualifications of its students to be granted a degree; Courts are not supposed to be learned in medicine and are not qualified to pass opinion as to the attainments of a student in medicine.

\* \* \*

"It should be emphasized that this Court will not pass on the issue of whether the plaintiff should have passed or failed his pediatrics-obstetrics course, or whether he is qualified to practice medicine. This must and can only be determined by an appropriate department or committee of the defendant's College of Medicine. Therefore, should the plaintiff prevail on the issue of whether the defendant acted arbitrarily, capriciously or

in bad faith, this Court will then order the defendant University to give the plaintiff a fair and impartial hearing on his dismissal order." (Citations omitted.) 244 F Supp at 160–161

In *Greenhill v Bailey, supra,* the Eighth Circuit similarly remanded for an administrative hearing where the student would be able to contest the reasons for his dismissal.

For the purposes of the present case, however, we do not think it advisable either logically or equitably to reverse the decision of the trial court and remand for an administrative hearing. The evidence before this Court indicates that plaintiff is currently progressing in his medical school career without further academic problems. To now order a belated decision on his qualifications to continue strikes this Court as exalting procedure over substance. While we do not disturb the actions of the trial court, we wish to stress that in future similar actions where error has been found, the remedy should be to refer the matter to the academic or administrative body for a proper hearing.

Affirmed. No costs, a public question being involved.