Anthony E. DIETZ, Plaintiff,

v.

**AMERICAN DENTAL ASSOCIATION, an Illinois Corporation, American Association of Endodontists, an Illinois Corporation, American Board of Endodontics, an Illinois Corporation, Defendants.**

Civ. A. No. 4–70422.

United States District Court,
E. D. Michigan, S. D.

Nov. 6, 1979.

Erwin B. Ellmann, Jeffrey A. Heldt, Levin, Levin, Garvett & Gill, Southfield, Mich., for plaintiff Dietz.

Edward P. Frohlich, Detroit, Mich., Harvey Sarner, Chicago, Ill., for defendants; Philip A. Gillis, Detroit, Mich., of counsel.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CORNELIA G. KENNEDY, Chief Judge.

The plaintiff, a Michigan citizen, sued the defendants, American Dental Association (ADA), American Association of Endodontists (Association), and the American Board of Endodontists, (Board), Illinois corporations, for breach of fiduciary duties and violations of their constitutions, by-laws,

and governing purposes. Specifically, plaintiff alleges that he is a licensed practicing dentist, a member of ADA and Association, who met all the qualifications for diplomate status in endodontics. He alleges that diplomate status allows the dentist to announce that he is a specialist without exclusively limiting his practice to endodontics and to command higher fees, attend special classes, teach, and more freely relocate, privileges which a non-diplomate may not enjoy.

The Board is the sole authority for certifying dentists as diplomates and this board, plaintiff alleges, remains under the control of the parent organization ADA. Plaintiff passed the written test and other requirements but twice failed the oral examination in April 1970 and April 1971. The Board's rules permit only two opportunities to pass the oral examination without retaking the written examination, but plaintiff's lawyer negotiated a third oral examination for plaintiff in October 1971, which he again failed. Plaintiff claims the Board's refusal to certify him is subjective, arbitrary, and unfair; he prays for damages and an injunction to compel defendants to certify him as a diplomate.

Plaintiff's claim that the decision was arbitrary and capricious stems from three objections. First, plaintiff objects to the use of oral exams in general. Plaintiff claims oral examinations, unless very carefully supervised, are inherently unfair and mask discriminatory reasons. Second, plaintiff claims the oral examinations were arbitrarily conducted in his case because his oral examinations were much too short; the questions asked were unrelated to endodontics, being primarily concerned with his appearance and the use of oral exams; and the examiners' conclusions that he was weak in basic sciences or unaware of the literature were unsupported. Third, plain-

tiff objects that he never had notice of the reasons for failing the examination or an opportunity to be heard even though he repeatedly asked for a statement of reasons. There is also some suggestion that the Board's grandfather clauses which certified some without examination and certified others without requiring advanced schooling were arbitrary.

The defendants consider the board certification of plaintiff to be outside this court's competence. They claim that since this is an academic, not a disciplinary decision, the court must defer to the Board's judgment.[1]

Defendants now move for summary judgment. Under Fed.R.Civ.Pro. 56, defendants are entitled to summary judgment only if there is no material dispute of fact and defendants are entitled to judgment as a matter of law.

Since this is an action in diversity, the federal court must look to the law of Michigan. *See Village of Constantine v. Home Insurance Co.*, 427 F.2d 1338, 1340 (6th Cir. 1970). In addition, see *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62; *Parsons College v. North Central Assn. of Colleges and Secondary Schools*, 271 F.Supp. 65 (N.D.Ill.1967) (state law, not constitutional law applied to expulsion of school from association); *Pinsker v. Pacific Coast Central Society of Orthodontists*, 12 Cal.3d 541, 116 Cal.R. 245, 526 P.2d 253, 259 n. 7 (1974) (procedure for admission to professional society is a matter of common law, not federal constitutional law). Since the United States Court of Appeals for the Sixth Circuit has affirmed this court's ruling that there was no state action in the present case (see Nos. 74–2047 and 74–2048 (6th Cir. September 11, 1975)), the plaintiff is left to his remedies under state law.

1. There is some suggestion that the Board is the only real party in interest. However, the information folder which sets forth the requirements for board certification states that the Board will comply with any directives of the Council on Dental Education of the ADA and that the Board was organized by the Associa-

tion. This folder is attached as an exhibit to plaintiff's supplemental answers to interrogatories. Since defendants filed one brief which did not treat individual defendants differently, this court is not inclined to presently rule on this issue.

■ Generally, courts are reluctant to interfere with the internal workings of a private association, but if justice and equity require, courts will review the decision of a private association. *See McCreery Angus Farms v. American Angus Association,* 379 F.Supp. 1008, 1019 (S.D.Ill.1974), *summarily aff'd,* 506 F.2d 1404 (7th Cir. 1974); *Falcone v. Middlesex County Medical Society,* 34 N.J. 582, 170 A.2d 791, 796 (1961).

■ Where a professional association has monopoly power and membership in the association significantly affects the member's practice of his profession, courts will hold the association has a fiduciary duty to be substantively rational and procedurally fair. The association must exercise its powers according to its by-laws and constitution; it cannot decide to exclude or expel a member or deny rights of membership for arbitrary, capricious, or discriminatory reasons. *See Hatley v. American Quarter Horse Association,* 552 F.2d 646, 655–56 (5th Cir. 1977) (refusal to register member's horse); *Marjorie Webster Junior College, Inc. v. Middle States Association of Colleges and Secondary Schools,* 139 U.S.App.D.C. 217, 432 F.2d 650, 655–57 (D.C. Cir. 1970), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384; *McCreery Angus Farms, supra,* 379 F.Supp. at 1010; *Pinsker, supra,* 526 P.2d at 255; *Blende v. Maricopa County Medical Society,* 96 Ariz. 240, 393 P.2d 926, 929 (1964); *Virgin v. American College of Surgeons,* 42 Ill.App.2d 352, 192 N.E.2d 414, 423 (1963); *Falcone, supra,* 170 A.2d at 799; *Kurk v. Medical Society of County of Queens, Inc.,* 46 Misc.2d 790, 260 N.Y.S.2d 520, 525 (1965); *Davidson v. Youngstown Hospital Association,* 19 Ohio App.2d 246, 250, 250 N.E.2d 892, 48 Ohio Op.2d 371 (1969); *Woodard v. Porter Hospital, Inc.,* 125 Vt. 419, 217 A.2d 37, 40 (1966). *But see Elizabeth Hospital, Inc. v. Richardson,* 269 F.2d 167 (8th Cir. 1959), *cert. denied,* 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (no cause of action under Arkansas law for denial of membership).

What will constitute a fair procedure depends on what kind of decision is being made. The Supreme Court in *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), distinguished between a disciplinary proceeding and an academic proceeding. The plaintiff in that case was a student who was dismissed from medical school for failure to meet academic standards. She argued she should have had notice and a hearing so she could respond to the charges. The Court held that a hearing was not necessary and that she had had more process than was due—she was warned of her clinical deficiencies; she took a set of oral and practical exams as an "appeal"; and she was evaluated by seven independent practicing physicians who spent considerable time with her. The Court noted that since an academic decision regarding a student's competence is to a large extent subjective and evaluative, such a decision is not readily adapted to judicial or administrative decisionmaking. *See also Mahavongsanan v. Hall,* 529 F.2d 448, 449 (5th Cir. 1976).

■ Where an academic decision of an educational institution is involved, courts will defer to the judgment of the school so long as the reasons for the decision are not discriminatory, arbitrary, or capricious. *See Mahavongsanan, supra* ; *Gaspar v. Bruton,* 513 F.2d 843, 850 (10th Cir. 1975). Likewise, courts defer to a professional association when it determines the competence of a member as long as the reasons for the decision are not arbitrary, capricious, or discriminatory. *See Marjorie Webster, supra* ; *McCreery Angus Farms, supra,* 379 F.Supp. at 1010; *Blende, supra,* 393 P.2d at 929–30; *Silver v. Castle Memorial Hospital,* 53 Hawaii 563, 497 P.2d 564, 567–68 (1973), *cert. denied,* 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 500; *Sussman v. Overlook Hospital Association,* 95 N.J.Super. 418, 231 A.2d 389, 392 (1967); *Davidson, supra,* 19 Ohio App.2d at 251; *Woodard, supra.*

■ Where an exclusion or expulsion is for a disciplinary reason—for example, failure to follow the rules—courts have held that a professional association must give notice and an opportunity to be heard to the

person excluded or expelled. *See McCreery, supra* (suspended membership for charges of using one bull for typing but another bull of same name for winning prizes); *Pinsker, supra* (application rejected for violation of non-delegation-of-work rule); *Virgin, supra* (expulsion due to unspecified charges of conduct injurious to the society); *Woodard, supra* (dismissal from hospital staff for failure to comply with rules and regulations of the staff). A few courts have held that where applications are rejected without reasons, the associations must supply a statement of reasons and an opportunity to be heard. *See Silver, supra* ; *Sussman, supra.* In neither of these cases, since the reasons were not specified, could the plaintiff determine whether the reason for rejection was academic or disciplinary. In *Hatley, supra,* the member's horse was not registered as a quarter horse for having excessive white on its body. The court felt the plaintiff should have had an opportunity to respond to that ruling. However, the association in its by-laws had provisions for a discretionary hearing in certain cases. The court determined that plaintiff's case fit that category. Thus, he should have had a hearing according to the by-laws. In the present case, there has been no suggestion that the by-laws required a hearing on the decision.

■ Academic decisions do not require hearings, *see Board of Curators, supra* ; *Mahavongsanan, supra* ; *Gaspar, supra,* although the student must at least be advised of his or her deficiencies, *see Gaspar, supra,* 513 F.2d at 851. (In *Board of Curators,* the Court did not decide whether the student had to be warned but the fact that she was was important for the majority, 435 U.S. at 85, 98 S.Ct. 948, and Justice Powell, 435 U.S. at 93, 98 S.Ct. at 956 (concurring opinion)).

Michigan law is scant. Two cases have been cited dealing with students failing medical school examinations. The Michigan Supreme Court, in a brief opinion, rejected one student's claims that the school's refusal to graduate him despite his failing the national board examinations deprived him of a contractual right and his claim that the school had unlawfully delegated its duties to the national board of examiners. *See In re Johnston,* 365 Mich. 509, 114 N.W.2d 255 (1962). The Michigan Court of Appeals considered whether the refusal to pass a Wayne State University medical student from the second to the third year was arbitrary and capricious. *See Maitland v. Wayne State University,* 76 Mich.App. 631, 257 N.W.2d 195 (1977). The court said its review was limited to determining if the evidence supported the trial court's decision that the school acted arbitrarily and unreasonably. During the examination, the wrong part of the exam was passed out to some of the students (although not to plaintiff). Plaintiff's score fell below the passing mark. The school decided plaintiff could not retake the examination. Plaintiff filed suit; the district court ordered the school to let plaintiff retake the second part of the exam (the part where the mixup occurred). The result was sealed, to be opened only in the event the court found the school acted arbitrarily and unreasonably. The district court held the school had so acted because it failed to consider the effect of distributing the wrong part of the test on the pass/fail point and had allowed others with lower marks than plaintiff's to retake the exam, some without an appeal. The district court then opened the sealed result of the retake exam and finding it to be above the passing score set by the school, ordered the school to place the plaintiff back on its student rolls. The court of appeals held that the evidence supported the district court's findings. It affirmed the trial court's disposition since the student was already progressing in his third year, but said the preferred remedy would be to remand to the school for a determination of whether the student was qualified to pass to the next year. This court has not found any other Michigan cases dealing with either educational institutions or professional associations. But the Michigan Court of Appeals, which noted the issue was one of first impression, indicated it would follow the general trend discussed above. This court concludes that Michigan would

defer to the judgment of a professional association concerning an applicant's competence provided the decision is not based on arbitrary, capricious, or discriminatory grounds.

■ The present case does not involve a disciplinary proceeding: plaintiff was not rejected for failing to conform with rules and regulations. Plaintiff was rejected because he allegedly was not qualified. Such an academic decision must be deferred to the Board unless the Board acted arbitrarily and capriciously. Thus, unless a genuine issue of fact exists that the Board acted arbitrarily, capriciously, or discriminatorily, defendants' motion for summary judgment must be granted.

■ Plaintiff's first claim is that oral exams are inherently unfair and the use of such exams without proper controls is arbitrary. Plaintiff does not give any evidence that the proper controls were lacking in this case. The mere fact that no record was kept of the questions asked does not mean the exams were improperly controlled. Plaintiff cites literature in the educational testing field to support his position, but no case had held the use of oral examinations to be inherently unfair. In *Board of Curators, supra,* the plaintiff was given a set of oral and written exams as part of her "appeal." Far from finding anything wrong with this procedure, the Court held she received more than enough due process. In *Johnston, supra,* the court did not consider whether or not the use of oral examinations was arbitrary. *Maitland, supra,* apparently involved only written exams. The use of oral examinations would seem to be within the discretion of the Board and beyond the competence of this court to decide. In order to know whether or not the oral exam is a poor measure of the applicant's knowledge and ability, the court would have to be able to determine what that applicant does or should know—something courts have traditionally deferred to the school or professional institution.

Plaintiff's second claim is that the Board acted arbitrarily in grading his oral examinations. Plaintiff claims in his supplemental answers to interrogatories and in his affidavit that the examinations were generally very short (less than ten minutes each except for the last one which was probably longer than ten minutes but not as long as thirty minutes); that the examiners spent most of their time questioning about his appearance or the use of oral exams rather than about endodontics; and that he is in fact well qualified. The Board's answers to interrogatories indicate that each candidate is questioned by two panels of three or four examiners for thirty minutes each. They admit that the examiners make every effort to put the applicant at ease, but insist that the questions are to ascertain the candidate's ability to apply fundamental knowledge associated with endodontics and to demonstrate depth of understanding of interrelations of the basic sciences and clinical practice. The comments from the examiners indicate such comments as "weak and nervous", "poor background in basic sciences", "poor awareness of literature".

■ The parties are obviously in dispute about material facts. If in fact plaintiff was not given the approximately one hour of testing that the Board gave every other candidate, that would appear to be arbitrary unless there was good reason for the shorter time, which is not presently in the record. If in fact the examiners spent their time discussing his appearance and not his knowledge, that would be arbitrary. These issues must be determined at trial. However, the third factor raised by plaintiff—whether plaintiff is in fact qualified—may not be determined at trial as it is beyond the competence of this tribunal to determine. This court may only determine whether the procedure was fair and whether arbitrary factors were used to determine the result. If the result was not based on arbitrary factors, but on substantive factors within the Board's competence, this court cannot substitute its judgment for theirs.

■ The third objection plaintiff raises is the lack of notice and an opportunity to be heard. Since plaintiff has attached to his affidavit of February 12, 1974, letters

from defendant Board advising him that he did not satisfactorily complete the oral examination, he was given some notice of the reason he was denied certification. Plaintiff's complaint presumably is that the notice given does not specify or detail any of the areas in which he was deficient. Absent the circumstance that the certification procedure permitted the oral examination to be taken twice, the only purpose of notice could be its use in contesting the results in some type of hearing or in establishing that the decision was arbitrary or capricious. Plaintiff, however, is not entitled to a hearing.

Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. . . . [T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.

Board of Curators, supra, 435 U.S. at 90, 98 S.Ct. at 955. The same is true of the decision in question.

■ Nor is a notice that specifies the areas in which the examiners found plaintiff deficient needed in order to establish that the examiners acted arbitrarily or capriciously. The person examined is aware of the questions asked and the subjects covered or omitted. If, as alleged here, no or little relevant inquiry is made of the examinee the notice is not needed to establish this fact. Notice prior to termination or suspension for academic reasons may serve the purpose of enabling the student to improve performance. Yet there does not appear to be any requirement that notice be given at a time to permit such correction nor is it likely that a court would hold that an academic institution could not suspend or terminate a student who failed all courses because the student had not been given notice of impending failure. In Greenhill v. Bailey, 378 F.Supp. 632 (S.D. Iowa 1974), the court rejected a medical student's claim that he was entitled to prior notice. As it noted:

As a decision to fail or pass is not made until the clerkship (medical clerk rotation) is completed and the student is evaluated by a committee, he could not have been informed of this fact until that time. At 636.

In Gaspar, supra, the court stated:

. . . school authorities, in order to satisfy Due Process prior to termination or suspension of a student for deficiencies in meeting minimum academic performance, need only advise that student with respect to such deficiencies in any form. All that is required is that the student be made aware prior to termination of his failure or impending failure to meet those standards.

At 851.

However, the holding should be confined to termination cases where notice is practicable and serves a purpose.

■ The by-laws of defendant Board permitted plaintiff to take the examination a second time. Absent that provision, he would have no right to a second examination. Although it undoubtedly would be helpful to be advised of one's areas of weakness so that the applicant could be better prepared for the second examination, due process which does not require the second examination cannot compel that it be preceded by any specific procedure. So long as the procedure afforded the plaintiff was no different than that afforded other applicants, he received what he was entitled to under the by-laws when permitted to take the examination a second time.

Moreover, the oral examination itself was a form of hearing. Plaintiff was clearly on notice that he was required to pass that examination. He was advised that he had failed. While it might be desirable to have a more structured oral examination procedure, this court cannot say that the present procedures, if applied in a neutral and fair manner, offend due process.

■ Finally, plaintiff has no cause for complaint against the grandfather clause. The Supreme Court has upheld a grandfather clause in a state statute requiring physicians to be registered. See Watson v. Maryland, 218 U.S. 173, 30 S.Ct. 644, 54

L.Ed. 987 (1910). If a governmental unit may use a grandfather clause, there appears no reason why a private association may not. *See Pinsker, supra,* 526 P.2d at 267.

In conclusion, material issues of fact remain in dispute concerning the length of the oral examinations and whether they were so meager in content that it is arbitrary and capricious to deny plaintiff diplomate status on the basis of the same. Plaintiff must be given then the opportunity to prove that defendants acted arbitrarily and discriminatorily in that his examinations were unduly short or devoid of discussion about endodontics.

Motion for summary judgment is GRANTED IN PART, DENIED IN PART.

IT IS SO ORDERED.