Thomas F. **LITKA**, Plaintiff,

v.

**UNIVERSITY OF DETROIT DENTAL SCHOOL**, Defendant.

No. 82–70106.

United States District Court,
E.D. Michigan, S.D.

May 2, 1985.

Jack F. Pitonyak, Troy, Mich., for plaintiff.

Frederick J. Ambrose, Bloomfield Hills, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

PHILIP PRATT, District Judge.

Before the Court is defendant University of Detroit Dental School's Motion for Rehearing the Court's *sua sponte* order remanding this case to state court. For the reasons stated below this motion is denied.

Plaintiff commenced this action in Wayne County Circuit Court alleging various state and federal claims. Defendant properly removed the action to this Court based upon these federal claims. The graveman of plaintiff's complaint is that defendant wrongfully prevented and deprived plaintiff a degree in dentistry. Counts I–IV and VII of his complaint are Michigan state law claims based upon an alleged breach of common law, statutory, and contractual obligations. Counts V and VI asserted claims based upon the due process and equal protection clauses of both the State and Federal Constitutions.

In March of 1984, plaintiff moved to remand this case to state court. The Court denied the motion because of the presence of the federal questions in the complaint. In October of 1984, this Court conducted a hearing on the defendant's motion for summary judgment. At the hearing the Court ruled that plaintiff's constitutional claims must be dismissed due to the absence of "state action." [1] Since only plaintiff's state claims remained before the Court and since those claims presented unsettled questions of state law, the Court was constrained to remand the case to state court pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768 (D.C.Cir. 1982); and *J.P. v. DeSanti*, 653 F.2d 1080, 1086 (6th Cir.1981). Defendant then filed this "Motion for Rehearing."

Presumably, defendant brings this motion pursuant to Rule 17 k of the Local Rules of this district which governs motions for rehearing and reconsideration. Rule 17 k provides in pertinent part:

Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the Court and parties have been misled but also show that a different disposition of the case must result from a correction thereof.

Defendant contends that the "palpable defect" of the Court's order to remand is as follows:

In [remanding the case], the Court may have inadvertently overlooked *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46

---

1. Plaintiff's claims in Counts V and VI were based upon the due process and equal protection clauses of the Federal and Michigan Constitutions. These provisions require that there must be "state action" in order to invoke their protection. *E.g., Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Donahoo v. Household Finance Corp.*, 472 F.Supp. 353 (E.D.Mich.1979); *Dow v. Michigan*, 396 Mich. 192, 240 N.W.2d 450 (1976); *McGruder v. Michigan Consolidated Gas Co.*, 113 Mich.App. 664, 318 N.W.2d 531 (1982). Plaintiff asserted that state action was present since the defendant receives funds and annual operating expenses from the State.

The Court found this argument without merit because the defendant was a private institution which is not under direct government control. Since the school is statutorily given exclusive control over its educational affairs (Mich.Comp. Laws Ann. § 450.175), the mere act of receiving state funds is not enough governmental involvement to constitute state action. *E.g., Spark v. Catholic University of America*, 510 F.2d 1277, 1282 (D.C.Cir.1975). *See e.g., Foster v. Ripley*, 645 F.2d 1142 (D.C.Cir.1981); *Payne v. Government of District of Columbia*, 559 F.2d 809 (D.C. Cir.1977). Thus, the Court dismissed Counts V and VI of plaintiff's complaint.

L.Ed.2d 542 ... (1976). There, the U.S. Supreme Court held that the *only* basis for a remand was the statutory criteria of 28 U.S.C. 1447(c), namely a case could not be remanded if it appears that the case was removed improvidently and without jurisdiction. The U.S. Supreme Court held the District Judge was not permitted to remand that case to the state courts based upon a consideration of a more speedy trial, as such a consideration was outside the scope of the remand statute [sic].

Defendant's Brief at page 2. Presumably defendant contends that if removal is originally proper, district courts cannot remand a case no matter what later developments change the circumstances of the case. In essence defendant is arguing that under 28 U.S.C. § 1447(c)[2] and the *Thermtron Products* court's interpretation of that enactment, if removal was proper in the first instance than the district court cannot remand the case no matter what later developments occur. Defendant's argument demonstrates a complete misunderstanding of the holding in *Thermtron Products*, the doctrine of pendent jurisdiction, and the almost two-hundred year history of federal court jurisdiction.

First, the Supreme Court did not rule in *Thermtron Products* that if removal was initially proper that the district court lacked authority to remand no matter the circumstances. In *Thermtron Products*, the case was removed to federal court based upon diversity of citizenship. Although acknowledging that the removal was proper, the district court remanded the case to state court, solely on the ground that his heavy docket would unjustly delay the plaintiffs from going to trial on the merits. The Supreme Court ruled that the court's heavy docket was not a reason which warranted remand under § 1447(c). The Court held that the district courts can only remand cases if: (i) removal was improvident; or (ii) the court lacks jurisdic-

tion. 423 U.S. at 343–44, 96 S.Ct. at 589–90. 13B C. Wright & A. Miller, *Federal Practice & Procedure* § 3739, at 336–37.

■ The defendant's argument ignores this latter consideration, the proper jurisdiction of the court. Defendant's understanding of *Thermtron Products* would mean that federal courts could not dismiss or remand cases even when developments in the proceeding left the Court without subject matter jurisdiction. Clearly this was not the intent of Congress in enacting § 1447 or the Supreme Court's interpretation of that enactment. Various congressional statutes and rules as well as Supreme Court doctrines have authorized and even required federal courts to question and be certain of the subject matter jurisdiction throughout the pendency of the proceeding. *See e.g.*, 28 U.S.C. §§ 1331 and 1332; Fed.R.Civ.Proc., Rule 12(b) & (h)(3); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *American Fire & Casualty v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *Mitchell v. Maurer*, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934); 13 C. Wright & A. Miller, *Federal Practice & Procedure* § 3522. There is no authority which interprets § 1447(c) or *Thermtron Products* to mean that if removal was initially proper that the court can no longer consider the propriety of its subject matter jurisdiction. Moreover, the constitutionality of such an interpretation is doubtful. *See e.g.*, 13 C. Wright & A. Miller, *Federal Practice & Procedure*, § 3522.

Furthermore, the defendant's argument misapplies the doctrine of pendent jurisdiction. Defendant's contention would make pendent jurisdiction a matter of right and would bind the district court to hear state claims long after the federal claims had been dismissed. Clearly the doctrine of pendent jurisdiction has not been interpreted or applied in this fashion.

---

**2.** Title 28 U.S.C. § 1447(c) provides in part:
    If at any time before final judgment it appears that the case was removed improvident-

ly and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

■ A federal court's exercise of pendent jurisdiction is a matter of discretion. The scope of the Court's discretion is limited by considerations of the jurisdiction authorized by Article III and the doctrine of comity. In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court both recognized the discretionary nature of this doctrine and addressed the scope of this discretion. The Court remarked as to the discretion of federal courts:

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is claim 'arising under the Constitution, the Laws of the United States, and Treaties made or which shall be made, under their Authority ...,' U.S. Const., Art. III, § 2, and the relationship between the claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court.... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, plaintiff's claims are such that he would ordinarily be expected to try them in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Id.* at 725, 86 S.Ct. at 1138 (emphasis in original). The discretionary nature of pendent jurisdiction has been uniformly recognized by the Circuit Courts, particularly the Sixth Circuit. *E.g., Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1069 (6th Cir.1984) ("A district court, in its discretion, can decline to hear pendent state claims when all federal claims have been dismissed prior to trial."); *J.P. v. DeSanti*, 653 F.2d 1080, 1086 (6th Cir. 1981).

The *Gibbs* court went on to define the scope of this power:

> The power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in consideration of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

383 U.S. at 726, 86 S.Ct. at 1139. Based upon this reasoning of the *Gibbs* court, federal courts have dismissed pendent state claims when the federal claims have been dismissed prior to trial because the state proceedings would not require a wasteful duplication of effort, and a state court will provide a more accurate, authoritative determination of the applicable law. *E.g., Financial General Bankshares, Inc. v. Metzger, supra; J.P. v. DeSanti, supra; Wham-O-Mfg. Co. v. Paradise Manufacturing Co.*, 327 F.2d 748 (9th Cir.1964) (cited with approval in *Gibbs*). It was these considerations raised by the *Gibbs* court as well as the rulings in two Circuit Court cases, *Financial General Bankshares, Inc. v. Metzger, supra* and *J.P. v. DeSanti, supra*, which guided this Court's discretion to decline to exercise pendent jurisdiction.

In *DeSanti*, plaintiffs were a class of juveniles who had appeared in the past or may appear in the future before the Juvenile Court of Cuyahoga County, Ohio, on complaints of delinquency, unruliness, neglect, dependency and abuse. On both federal and state grounds plaintiffs challenged the juvenile court's use of social histories both during adjudication and in post-adjudication procedures. The challenge concerning the post-adjudication use involved the interpretation and application of an Ohio statute. The district court exercised pendent jurisdiction over that claim and deter-

mined that the practice violated Ohio Rev. Code § 2151.14. The Court of Appeals reversed, holding that "the District Court abused his discretion by exercising jurisdiction to interpret" the Ohio statute. 653 F.2d at 1087.

The Court of Appeals recognized that under the Supreme Court's holding in *Gibbs* that "federal courts have the *power* to hear" pendent state claims, but that this power was limited to considerations of judicial restraint and comity. *Id.* at 1086. The court held that the district court should not have passed upon the state law issue because Ohio had a substantial interest in the interpretation of its statute, that Ohio law was unclear as to the proper resolution of the issue, that the record was not sufficient to permit a well-considered determination, and that the state law grounds were not sufficiently raised by the parties. *Id.* at 1086–87.

The opinion in *Financial General Bankshares, Inc. v. Metzger, supra,* is also instructive because of its close similarity to the case at bar. In *Metzger,* the complaint was filed in federal district court on March 18, 1978. The complaint alleged various violations of federal security laws as well as pendent local claims of breach of fiduciary and ethical obligations. Many motions were heard and extensive discovery occurred in the following two years after the filing of the complaint. In the summer of 1980, the parties settled a substantial number of the federal claims. On August 2, 1980, the district court entered summary judgment is favor of defendant on the remaining federal claims. The court retained jurisdiction over the pendent claims based upon considerations of judicial economy. The district court ruled that since extensive discovery on the pendent causes of action had taken place, the court was familiar with the relevant facts, and the parties were ready to proceed to trial, under the principles of judicial economy enunciated in *Gibbs* it should exercise jurisdiction over the pendent common law claims. The Court of Appeals disagreed and reversed the district court's ruling.

The Circuit Court first held that the district court over-estimated the judicial economy to be gained by exercising such jurisdiction. The fact that discovery had been completed in the district court, the Circuit Court reasoned, would not mean it would have to be duplicated in the state court, since the rules of discovery and evidence paralleled the federal rules. The Court further stated that the expenditure of additional judicial effort after dismissal of the federal claims:

> also undermines the District Court's determination that convenience and economy favored exercise of pendent jurisdiction over the state claims. The District Court denied Metzger's motion to dismiss the common law claims on August 2, 1980. It then set a trial date, entered a pretrial order, and conducted a three-day trial from November 19 to 20, 1980 ... *None of this expenditure of judicial resources contributed to resolution of any issue of federal law.*

680 F.2d at 775 (emphasis supplied).

The *Metzger* court further ruled that the district court did not properly take into account the "unsettled and novel" nature of the pendent claims. The court stated:

> [T]he importance of this factor was articulated in *Gibbs,* which emphasized that state courts would provide a "surer-footed reading of applicable law." ... More recently, in two cases applying the *Gibbs* principles in somewhat different contexts, the Supreme Court has reaffirmed the importance of this factor in deciding whether to exercise pendent jurisdiction. In *Moore v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 ... (1973), the Court upheld the District Court's dismissal of a state claim against a pendent party on the ground that dismissal was a proper exercise of discretion.... The Court wrote, 'As is evident from this Court's decision in *Gibbs,* ... the unsettled nature of state law was an entirely appropriate factor for the District Court to consider.' ... Subsequently, in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 ... (1974), a

case involving a pendent state claim, the Court explained.

> [T]he rationale of *Gibbs* centers upon considerations of comity and the desirability of having a reliable and final determination of the state claims by state courts having more familiarity with the controlling principles and the authority to render a final judgment.
>
> .   .   .   .   .
>
> Although the degree of uncertainty in state law is one of several factors that should guide the district court's discretion, it should be given considerable weight.

*Id.*, 680 F.2d at 776. The *Metzger* court went on to hold that the district court had abused its discretion in retaining jurisdiction over the unsettled local claims.

█ This Court was constrained under these considerations to remand the remaining state claims to state court. First, this case is not at a stage where judicial economy strongly weighs in favor of retention of the state claims. The federal claims have been dismissed long before trial. This is not a situation where the federal claims were before the court during or on the eve of trial. *See e.g., Gray v. International Association of Heat & Frost Insulators & Asbestos Workers,* 447 F.2d 1118 (6th Cir. 1971). Discovery has been completed in this case, but as the *Metzger* court recognized, the discovery the parties have performed will not be wasted and should be likewise useable in the state forum. For the Court to proceed with this matter any further would be inappropriate since "[n]one of this expenditure of judicial resources [will] contribute[ ] to [the] resolution of any issue of federal law." 680 F.2d at 775.

Second and more importantly, the remaining claims are state actions based upon an alleged breach of Michigan "common law and/or statutory and/or contractual duties"[3] which are grounded on an unsettled area of Michigan law. Only two Michigan decisions have touched upon this area of law, *In re Johnston,* 365 Mich. 509, 114 N.W.2d 255 (1962), a Michigan Supreme Court case of little consequence or guidance, and *Maitland v. Wayne State University,* 76 Mich.App. 631, 257 N.W.2d 195 (1977), an opinion difficult to comprehend and apply.

In *Maitland,* the plaintiff sought reinstatement as a student at Wayne State University Medical School. The opinion does not indicate on what grounds, be it federal or state, or what theory, in tort or contract, plaintiff's claims were based. Apparently, the plaintiff was challenging the legitimacy of the school's decision to drop him as a student based on certain academic criteria. The *Maitland* court looked to two federal court decisions, *Green v. Bailey,* 519 F.2d 5 (8th Cir.1975) and *Connely v. University of Vermont,* 244 F.Supp. 156 (D.C.Vt.1965), for guidance on the scope of judicial review of academic decisions made by public school faculty. Both of the federal decisions were applying a federal constitutional due process analysis. The *Maitland* decision, however, was clearly not based upon the federal due process clause. In *Dietz v. American Dental Association,* 479 F.Supp. 554 (E.D.Mich. 1979),[4] this Court assumed that the *Maitland* court was basing its decision on Michigan common law. The court noted, however, its difficulty of applying Michigan law because of the lack of guidance. *Id.* at 558–59.

Michigan law and the *Maitland* decision presently are even more difficult to apply because of recent developments in the law. The *Maitland* court adopted the federal standard for judicial intervention in academic decisions that it perceived to exist in 1976. Since *Maitland* the Supreme Court in *Board of Curators v. Horiwitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) and various circuit court opinions[5] have given

---

3. Plaintiff's Complaint, Count I. *See also* Counts II and VII.

4. Jurisdiction in *Dietz* was based upon diversity of citizenship.

5. *E.g., Hines v. Rinker,* 667 F.2d 699 (8th Cir.

even greater deference to academic decisions of state university faculties. Whether Michigan courts would also adopt this more constrained approach is a question this Court would be required to determine with little guidance.

Furthermore, the *Maitland* court did not specify whether this claim sounds in tort or contract law. The plaintiff has sought both contractual and tort remedies. Whether the plaintiff can assert both of these claims or only one or the other is not clear under Michigan law. This question is of substantial importance since the defendant contends that the three-year tort statute of limitations has run and plaintiff's common law claims are barred.

Due to this uncertainty in Michigan law it would not be appropriate for this Court to exercise pendent jurisdiction and resolve these state law questions. *United Mine Workers of America v. Gibbs, supra; Lee v. Western Reserve Psychiatric Habilitation Center, supra; Financial General Bankshares, Inc. v. Metzger, supra; J.P. v. DeSanti, supra.* A "surer-footed reading" of state law is necessary. *United Mine Workers of America v. Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139.

In sum, this Court correctly ruled that the exercise of pendent jurisdiction was not warranted due to considerations of judicial economy and principles of comity. Therefore, defendant's Motion for Reconsideration is DENIED and this case is REMANDED to state court.

IT IS SO ORDERED.