**Orlando A. CASTILLO, Plaintiff,**

v.

**THE AMERICAN BOARD OF SURGERY, Defendant.**

**No. CIV.A. 00–399.**

United States District Court, E.D. Pennsylvania.

Aug. 27, 2002.

Sidney L. Gold, Lovitz & Gold, PC, Philadelphia, for Plaintiff.

Gabriel L.I. Bevilacqua, Todd Alan Ewan, Saul Ewing LLP, Philadelphia, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the Motion for Summary Judgment of Defendant, the American Board of Surgery (the "Board" or "Defendant"). In this case, Plaintiff, Orlando A. Castillo ("Plaintiff" or "Castillo"), brought claims against the Board under 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et. seq.*, claiming that he was discriminated against because he failed the oral portion of his Board Exams. For the reasons that follow, the Court will grant summary judgment as to the Title VII and § 1981 claims and will dismiss the PHRA claims without prejudice.

## BACKGROUND

Plaintiff's national origin is Peruvian and his race is Hispanic. He received his medical degree in Peru in 1984. In 1989, Plaintiff moved to the United States. Plaintiff is a citizen of the United States and is currently a practicing surgeon. Plaintiff became certified to practice medicine in the United States in 1989 and has been practicing as a general surgeon since 1995.

In June 1995, Plaintiff completed an application to sit for the Board's entrance examinations. The Board's certifying procedures require an applicant to pass two exams. An applicant must first take and pass a written exam. Upon passage of the written exam, an applicant must then take and pass an oral exam. Plaintiff passed the Board's written exam in October of 1995. Plaintiff then took the oral exam on three separate occasions and failed each time.

The oral exam consists of three thirty minute oral sessions conducted by two examiners in each session. Thus, for each oral exam, an applicant has six different examiners and a candidate never has the same examiner for any subsequent attempts. To pass the exam, an applicant must pass in two of the sessions and both examiners during that session must give the applicant a passing score. The Board allows an applicant the opportunity to pass the oral exam three times during a five year period. If an applicant fails the oral exam after three attempts, the applicant must satisfactorily complete at least one year of surgical education in a surgery program which is approved in advance by the Board before becoming eligible to take the exam again.

When an applicant fails the oral exam, a dictation of the candidate's performance is made. Further, an applicant can request a critique of his or her performance. This critique is based on the examiners' notes and the dictations. Further, if an applicant wishes to appeal his or her results, there is a three step appeals process within the Board. Moreover, all applicants are instructed to report any unusual or offensive conduct that occurs during the exam to the on-site office immediately following the exam.

The first time Plaintiff sat for the oral exam was in October of 1996 in Rochester, New York. Plaintiff did not pass that exam; rather, he received five failing scores and one passing score from the six examiners. Plaintiff requested a critique of his performance from this exam, but did not report any unusual or offensive conduct and did not appeal the decision.

Plaintiff took his second oral exam in November of 1997 in Washington, D.C. Plaintiff again failed the exam. He received four failing scores and two passing scores from six different examiners. Plaintiff also received a critique of his performance from this test, but again did not report any unusual or offensive conduct and did not appeal the decision.

Plaintiff then took the exam for a third time on September 14, 1998, in Philadel-

phia, Pennsylvania. By letter dated September 15, 1998, Plaintiff was informed that he had again failed the exam and again received failing scores from four of the examiners and passing scores from two of the examiners. Plaintiff was also informed in the September 15, 1998, letter that he must complete one year of additional surgical training before becoming eligible to take the oral exam again.

Plaintiff wrote a letter to the Board on December 9, 1998, informing the Board that he felt he was the victim of national origin/ancestry discrimination. On December 30, 1998, 107 days after Plaintiff took the September 14, 1998 exam, Plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission (the "PHRC"). On July 23, 1999, 322 days after Plaintiff took the September 14, 1998 oral exam, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (the "EEOC").

On January 10, 2000, Plaintiff filed the Complaint in this case. In his Complaint, Plaintiff alleges he was subjected to discrimination on the basis of his national origin and race in violation of Title VII, § 1981, and the PHRA. Plaintiff argues that these discriminatory violations resulted in his failing the oral exam. Plaintiff has clarified that his claims are only relevant as to the third oral exam administered on September 14, 1998.[1] Defendant filed a Motion for Summary Judgment as to each of Plaintiff's claims, which we now consider.

## DISCUSSION

### I. Legal Standard

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." ·Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," id. at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 251–52, 106 S.Ct. 2505.

### II. Plaintiff's Title VII Claims

■ Under Title VII, 42 U.S.C. § 2000e, it is unlawful for an employer to, among other things, discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment or to limit, segregate or classify its employees in

---

1. Thus, the Court will not consider any evidence as it relates to the first two examinations.

any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect that individual because of his or her race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a). "Employer" for Title VII purposes is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b).

According to the uncontradicted evidence before the Court, the Board does not presently, and has never, employed more than fourteen (14) people. *See* Aff. of Wallace P. Ritchie, Jr., M.D., Ph.D. attached as Ex. A to Def.'s Mot. for Summary Judgment. Thus, the Board does not qualify as an "employer" under Title VII, and Plaintiff's Title VII claims against the Board are dismissed with prejudice. *See* 42 U.S.C. § 2000e(b) (to qualify as an employer for Title VII purposes must employ 15 or more employees).

### II. *Plaintiff's § 1981 Claims*

Subsection (a) of § 1981 provides:

(a) **Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

■ To state a claim under § 1981, "a plaintiff 'must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts....'" *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 797 (3d Cir.2001) (quoting *Yelverton v. Lehman,* No. CIV.A. 94–6114, 1996 WL 296551, at *7 (E.D.Pa. June 3, 1996), *aff'd. mem.,* 175 F.3d 1012 (3d Cir.1999)). Section 1981 "can be violated only by purposeful discrimination." *General Building Contractors Association, Inc., v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Thus, under § 1981, a plaintiff can only bring a claim for disparate treatment, not disparate impact. *Id.; see also Jones v. GPU, Inc.,* No. CIV.A. 01–4950, 2002 WL 1673304, n. 1 (E.D.Pa. July 18, 2002) ("Plaintiffs conceded that a disparate impact theory of liability is not available under § 1981....").

#### 1. *Disparate Treatment*

■ A disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion.[2] *E.E.O.C. v. Metal Service Co.,* 892 F.2d 341, 347 (3d Cir.1990). Disparate treatment claims are analyzed under the now familiar burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (discussing burden shifting framework); *St. Mary's*

---

**2.** The legal elements of a claim under § 1981 are the same as those of a Title VII claim and are analyzed under the same framework. *See Jones v. School District of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999).

*Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (same).

The first step in this framework is to establish a *prima facie* case. To establish a *prima facie* case under a disparate treatment theory, a plaintiff must show (1) that he or she is a member of a protected class; (2) that he or she was qualified for the job but was nevertheless rejected for the position; and (3) that non-members of the protected class were treated more favorably. *Ezold v. Wolf, Block, Schorr and Solis-Cohen,* 983 F.2d 509, 522 (3d Cir. 1992).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824.

Plaintiff must then demonstrate that the defendant's stated reasons for the adverse employment action are not the true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1825. There are two ways by which a plaintiff can fulfill its burden at summary judgment with respect to showing pretext. The plaintiff must point " 'to some evidence, direct or circumstantial, from which a fact-finder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.' " *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 413 (3d Cir. 1999) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994) and *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1067 (3d Cir.1996) (en banc)). Further, it must be shown that the employer bore a discriminatory animus against the employee and that this animus manifested itself in some challenged action, whether it be dis-

missal, failure to promote, failure to hire or, in this case, failure to pass.

### 2. *Plaintiff's Case*

■ In determining whether Plaintiff has made out a *prima facie* case of discrimination under § 1981, the Court first finds, and Defendants concede, that Plaintiff is a member of a protected class. Further, the Court finds that Plaintiff was "qualified" for the position in that he had taken and passed the written examination and was, thus, qualified to take the oral exam. We must now determine whether Plaintiff has presented any evidence to demonstrate that non-members of the protected class were treated more favorably.

Plaintiff admits that he has no evidence of any direct, intentional discrimination. *See* Pl.'s Dep. Tr. at pp. 121–23. Rather, Plaintiff argues that the statistics regarding the fail rate on the oral examination of Hispanics when compared to that of Caucasians reflects the Defendant's discriminatory intent.

■ While statistical evidence is more common in disparate impact cases, plaintiffs in a disparate treatment case may also introduce statistical evidence to support an inference of discrimination. *See Bruno v. W.B. Saunders Co.,* 882 F.2d 760, 767 (3d Cir.1989); *see also Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1217 (3d Cir.1995) (disparate treatment plaintiffs are not precluded from introducing statistical evidence); *Duvall v. Polymer Corp.,* No. CIV.A. 93–3801, 1995 WL 581910, at *9 (E.D.Pa. Oct.2, 1995) (same). However, "in *individual* disparate treatment cases ... statistical evidence is less significant because the ultimate issue is whether the *particular* plaintiff was the victim of an illegitimately motivated employment decision." *Krodel v. Young,* 748 F.2d 701, 710 (D.C.Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985). Further, while the sta-

tistical evidence is "admissible and may be helpful," it is "ordinarily not dispositive." *Id.* (citing *Furnco Constr. Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

In this case, Plaintiff first argues that we should limit the statistical data to the test takers of the September 1998 Philadelphia oral examination as opposed to looking at the national numbers.[3] While the Court doubts that these limited numbers are sufficient to make any meaningful analysis, for the purposes of this discussion, we will only look at the statistics for the September 1998 Philadelphia oral exam.

There were 197 applicants for the September 1998 Philadelphia oral exam. Ten (10) of those applicants identified themselves as Hispanic. Of those 10 Hispanic applicants, three (3) failed the exam. Thus, 30% of the Hispanic applicants failed the exam. There were 147 Caucasian applicants. Of this 147, eighteen (18) failed the exam. Thus, 12.24% of the Caucasian applicants failed the exam. Plaintiff argues that the discrepancy in the fail rate–30% vs. 12.24%-leads to an inference of discrimination sufficient to establish a *prima facie* case.

The Court finds that this statistical evidence, standing alone, is insufficient to demonstrate a *prima facie* case of discrimination. In fact, the Court finds the numbers are not statistically significant at all. *See generally Haskell v. Kaman Corp.,* 743 F.2d 113, (2d Cir.1984) (rejecting statistical data where the sample size was too

small to be meaningful); *see also Kittredge v. Parker Hannifin Corp.,* 597 F.Supp. 605, 610 (W.D.Mich.1984) ("large statistical differences are required before courts will attach any real significance to statistical evidence").

Plaintiff suggests that the numbers show that Hispanics fail at a rate of three times that of Caucasians. While the numbers may appear *statistically* to show that, the numbers are too small from which to make any inferences. For example, if only two more examinees of Hispanic origin had passed the exam, by Plaintiff's own admission, he would not have a claim. Further, Plaintiff does not account for any other reasons that any of these applicants may have failed the exam. There is, for example, no analysis of the medical education or training programs that the candidates who failed attended. Moreover, Plaintiff's numbers fail to take into account that he was a re-examinee and not a first time test taker. Defendant has presented evidence to demonstrate that re-examinees, regardless of race or national origin, fail at a greater rate than first time test takers. *See* Supplemental Aff. of Wallace P. Ritchie, Jr., M.D., Ph.D. attached as Ex. A to Def.'s Reply Brief.

■ However, even if the Court assumes that Plaintiff has made out a *prima facie* case using the statistical data provided, he still cannot overcome Defendant's legitimate, non-discriminatory reason for his failing score. The uncontradicted evidence demonstrates that the Board's pri-

---

**3.** The national numbers for the years 1997–2000 are as follows:

From September 1997 through June 1998, the national fail rate for the Oral Examination was 22.9%. For the same period, the fail rate for individuals of Hispanic national origin was 23.1%. From September 1998 through June 1999, the overall fail rate for the Oral Examination was 19.1%. For that same period, the fail rate for individuals of

Hispanic national origin was 26.2%. From September 1999 through April 2000, the overall fail rate for the Oral Examination was 21.6%. For that same period, the fail rate for individuals of Hispanic origin was 20.6%.

*See* Aff. of Wallace P. Ritchie, Jr., M.D., Ph.D. attached as Ex. A to Def.'s Mot. for Summary Judgment.

mary purpose is to "certify the education, experience, and knowledge of broadly qualified and responsible surgeons." *See* Aff. of Wallace P. Ritchie, Jr., M.D., Ph.D. attached as Ex. A to Def.'s Mot. for Summary Judgment. Defendant argues that six different examiners tested Plaintiff during the September 1998 oral exam. Of these six, four determined that Plaintiff failed the exam and was not qualified to be board certified and two determined that Plaintiff passed the exam. Defendant maintains that the Board has a legitimate, non-discriminatory purpose in failing applicants who its examiners do not deem qualified for board certification. The Court agrees.

Defendant further argues that this Court should defer to the decision of the six, independent oral examiners. *See Hankins v. Temple University,* 829 F.2d 437, 443 (3d Cir.1987) (in context of Title VII discrimination claim, court held that "[u]niversity faculties...must have the widest discretion in making judgments as to the academic performance of their students"); *see also Dietz v. American Dental Association,* 479 F.Supp. 554, 557 (E.D.Mich.1979) ("courts defer to a professional association when it determines the competence of a member as long as the reasons for the decision are not arbitrary, capricious, or discriminatory").

Plaintiff does not provide any evidence to demonstrate that Defendant's legitimate, non-discriminatory reason, that Plaintiff was not qualified, is a pretext for discrimination. For example, Plaintiff has not presented any evidence that the examiners made any discriminatory comments to him or otherwise demonstrated a discriminatory motive. Further, Plaintiff has not presented any evidence that there were any discrepancies in the administration of the test that would demonstrate that the Defendant's finding that he was unqualified was a pretext for discrimina-

tion. *See Dietz,* 479 F.Supp. at 559 (finding genuine issue of material fact where plaintiff presented evidence that examiners spent "their time discussing [plaintiff's] appearance and not his knowledge" and where the plaintiff's examination was shorter than it should have been and he was "not given the approximately one hour of testing that the Board gave every other candidate").

To refute the Defendant's legitimate, non-discriminatory reason, Plaintiff only presents the same statistical evidence that was discussed above. Even if the Court allowed this evidence to satisfy the *prima facie* case requirements, we will not allow the statistical evidence presented by Plaintiff to demonstrate a pretext. *See, e.g., Equal Employment Opportunity Commission v. Texas Instruments Inc.,* 100 F.3d 1173, 1185–86 (5th Cir.1996) (in individual disparate treatment case, statistical evidence alone is insufficient to demonstrate pretext in the face of a particularized, legitimate, nondiscriminatory reason); *Krodel,* 748 F.2d at 710 (statistical evidence in individual disparate treatment case is "ordinarily not dispositive"). Therefore, the Court will grant summary judgment as to Plaintiff's § 1981 claim.

### III. *Plaintiff's PHRA Claim*

As there are no remaining federal claims, the Court does not reach the merits of Plaintiff's PHRA claim. The Court dismisses that claim without prejudice to allow Plaintiff to pursue it in state court.

### CONCLUSION

An appropriate Order follows.

### *ORDER*

AND NOW, this 27th day of August, 2002, upon consideration of the Defendant's Motion for Summary Judgment and Plaintiff's response thereto, it is hereby

ORDERED that, for the reasons set forth in the accompanying Memorandum, the Motion is GRANTED as follows:

1. Summary Judgment is GRANTED in favor of Defendant with regard to Plaintiff's Title VII claim;

2. Summary Judgment is GRANTED in favor of Defendant with regard to Plaintiff's § 1981 claim; and

3. Plaintiff's PHRA claim is DISMISSED WITHOUT PREJUDICE.