NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1914
_____

PATRICIA L. CATULLO
*Appellant*
v.

LIBERTY MUTUAL GROUP, INC.;
LIBERTY MUTUAL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-09-cv-03359)
District Judge:  Honorable Robert B. Kugler
_____

Submitted Under Third Circuit LAR 34.1(a)
December 21, 2012

Before: MCKEE, Chief Judge, SLOVITER, and VANASKIE, Circuit Judges

(Filed:  January 14, 2013)
_____

O P I N I O N
_____

SLOVITER, Circuit Judge.


Patricia Catullo appeals the District Court's grant of summary judgment in favor

of her former employer, Liberty Mutual Group, Inc. and Liberty Mutual Insurance

Company, Inc. (collectively "Liberty Mutual").  The District Court granted summary

judgment on Catullo's age discrimination and intentional infliction of emotional distress ("IIED") claims.  We will affirm the District Court's grant of summary judgment on Catullo's age discrimination claim and vacate the dismissal of her IIED claim.[1]

I.

Catullo began working for Liberty Mutual in May 1998.  She was hired as a Claims Specialist III and was promoted to Senior Claims Specialist I in 2000.  She held this position until she was terminated in 2008.   In 2006, Catullo was transferred from the Personal Injury Protection ("PIP") litigation department to the PIP medical claims unit.

In November 2008, supervisor Rose Salcedo became suspicious that Jen Bailey, an adjuster at Liberty Mutual, was improperly discarding documents into recycling bins, instead of placing them in claim files.  Salcedo and Lisa Kerns, a manager, secured the bins and attempted to identify improperly discarded documents and which adjusters were responsible for those documents.  Kerns and Salcedo attributed one stack of documents to Jen Bailey, one stack to Glenn Moorehead, and some documents to Catullo.   In December 2008, Catullo was told that she was being terminated for cause for improperly discarding documents.  She was fifty-nine years old when she was terminated.

---

[1]  The District Court had jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction under 28 U.S.C. § 1291.  We review *de novo* a district court's grant of summary judgment and we employ the same standard as applied below.  *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004).  "A district court may grant summary judgment when there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law."  *Id.*

II.

Catullo brings her age discrimination claim pursuant to the New Jersey Law Against Discrimination ("the LAD"). N.J. STAT. ANN. § 10:5-1 *et seq.* (West 2002 & Supp. 2012). The LAD makes it unlawful for an employer to "discharge or require to retire . . . from employment [an] individual or to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment" on the basis of age. § 10:5-12(a). Catullo presents circumstantial evidence and no direct evidence of age discrimination. In cases under the LAD where a party presents circumstantial evidence of discrimination, New Jersey has adopted the *McDonnell Douglas* burden-shifting analysis. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004); *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954-55 (N.J. 1999). Under the *McDonnell Douglas* standard, Catullo must first present evidence to establish a prima facie case of discrimination. *Bergen*, 723 A.2d at 955. Liberty Mutual must then come forward with "admissible evidence of a legitimate, non-discriminatory reason" for the adverse action challenged. *Id.* The burden then shifts back to Catullo, "who has 'the opportunity to prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination.'" *Id.* (quoting *Andersen v. Exxon Co., U.S.A.*, 446 A.2d 486, 491 (N.J. 1982)).

Catullo alleges three adverse actions taken against her by Liberty Mutual: wrongful termination, discriminatory transfer, and failure to promote. We assume, as the District Court did, that Catullo has established prima facie cases of discrimination for

3

these three adverse actions.[2] Liberty Mutual provides legitimate nondiscriminatory reasons for taking these actions. Catullo is unable to prove these reasons are pretextual, warranting dismissal of her age discrimination claim.

As an initial matter, Catullo argues that the District Court erred in requiring her to "show not only that the defendant employer's supposed legitimate nondiscriminatory reason was false, but also that discrimination was the real reason for termination," in order to establish pretext. *Catullo v. Liberty Mut. Grp., Inc.*, No. 09-3359, 2012 WL 762163, at *5 (D.N.J. March 6, 2012) (internal quotation marks omitted). As we have stated, a plaintiff must prove both that the asserted reason is false and that discrimination is the real reason *at trial*. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). At the summary judgment stage, a plaintiff can show pretext by either means. *Id.* at 764; *see also Bergen*, 723 A.2d at 955.[3] However, as Catullo cannot establish pretext under either

---

[2] Liberty Mutual argues that the discriminatory transfer was not an adverse action, as Catullo experienced no material changes as a result of the transfer. "Under the LAD, an adverse employment action is one sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner." *Ivan v. Cnty. of Middlesex*, 595 F.Supp.2d 425, 470 (D.N.J. 2009) (internal quotation marks omitted). Catullo argues this was an adverse employment action because her new position was a "dead-end job where there were no claims personnel higher than Catullo's ranking of Senior Claims Specialist I." Reply Br. at 10. She further testified that there was a perception in the office that her new position was not as prestigious as her old position. We will assume without deciding that the discriminatory transfer is an adverse employment action.

[3] There may be some confusion on this point. *See Bergen*, 723 A.2d at 955 ("An employee may [show pretext at the summary judgment stage] either by persuading the court directly that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.") (internal quotation marks omitted). *But see Henry v. N.J. Dep't of Human Servs.*, 9 A.3d 882, 889 (N.J. 2010) (stating that to prove pretext at the summary judgment stage, "the plaintiff must show that the employer's reason was both false and

4

prong, we will affirm the District Court's judgment. *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc) ("We may affirm the District Court on any grounds supported by the record.").

A. Wrongful Termination

Liberty Mutual states that Catullo was terminated because an investigation, led by Kerns, established that Catullo had improperly discarded documents in the recycling bins.

To demonstrate pretext, Catullo first argues that Kerns conducted a sham investigation and "engaged in a witch-hunt in an effort to frame Catullo." Appellant's Br. at 12. Catullo points to several alleged flaws in the investigation. However, this is not enough to show pretext. Kerns testified as to her reasons for attributing certain documents to Catullo. For example, Kerns matched the claim number on the document to Catullo's claim number; additionally, Catullo's name appears on several of the documents. "To discredit the employer's proffered reason . . . . the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" that a reasonable factfinder can find them "unworthy of credence." *Fuentes*, 32 F.3d at 765 (internal citations and quotation marks omitted). Catullo has not met her burden of demonstrating such inconsistencies and contradictions here.

Catullo also argues that the District Court erred in pointing to Jen Bailey and Glenn Moorehead as further evidence to substantiate Liberty Mutual's reason for

motivated by discriminatory intent.") (internal quotation marks omitted). In this case, as Catullo's evidence is insufficient under either prong, her discrimination claim can be dismissed under both standards.

5

Catullo's termination. The District Court did not err in pointing to Bailey and Moorehead. Bailey and Moorehead, both significantly younger than Catullo, were accused of improperly discarding mail at the same time as Catullo, under the same investigation, with the same supervisors involved in the decision to terminate. Catullo, Bailey, and Moorehead were all terminated as a result. Instead, Catullo states that the Court should have compared her to other employees who improperly discarded documents at different periods of time but were not terminated. Catullo does not provide enough evidence to demonstrate that these other employees are sufficiently similar to her. Thus, she does not establish that they were proper comparators.

Finally, Catullo argues that the District Court improperly ignored statistical evidence regarding terminations at Liberty Mutual and erred in requiring expert testimony to prove discrimination. Under Third Circuit precedent, Catullo is "not precluded from introducing statistical evidence as circumstantial evidence of discrimination." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1217 (3d Cir. 1995). Such statistical evidence in disparate treatment cases, such as this one, does not have to be "so finely tuned." *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 767 (3d Cir. 1989). However, a court can disregard or give little weight to statistical evidence that it finds to be unconvincing. *See Castillo v. Am. Bd. of Surgery*, 221 F.Supp.2d 564, 570 (E.D. Pa. 2002) (stating that the evidence provided was statistically insignificant); *Riding v. Kaufmann's Dep't Store*, 220 F.Supp.2d 442, 459 (W.D. Pa. 2002) (holding that as plaintiff did not place her statistics in context, she did not raise an inference of discrimination). Here, the District Court did not give weight to the statistics presented, as

6

Catullo had not meaningfully analyzed them. We agree with the District Court and find Catullo's statistics insufficient to show pretext. As Catullo has not shown that Liberty Mutual's reason for terminating her is pretextual, we affirm the District Court on this claim.

B. Discriminatory Transfer

Catullo states that she was transferred to a less prestigious position in the PIP medical claims unit in 2006 for discriminatory reasons. Liberty Mutual states that Catullo had trouble meeting deadlines and performing effectively in the PIP litigation unit and therefore was transferred to a unit with "less stringent requirements." Appellee's Br. at 29. Catullo argues that there is no evidence to support this claim. However, Liberty Mutual's proffered reason is supported by comments in employment evaluations of Catullo for the years 2003, 2004, and 2005, written by Kendra Godwin. Godwin noted, for example, that Catullo "has been severely behind in addressing her new arbitration and litigation assignments" App. at 427, and that "[l]itigation assignment backlog is still a major issue." App. at 428. Kerns, who made the decision to transfer Catullo, also testified that Godwin told her Catullo was having trouble managing her workload. Catullo does not provide sufficient evidence to show that Liberty Mutual's reason for her transfer is pretextual.

C. Failure to Promote

Catullo was promoted from Claims Specialist III to Senior Claims Specialist I in 2000. She alleges that she was not promoted after this time for discriminatory reasons. Liberty Mutual states that Catullo was not promoted due to her inadequate performance

at work.  Liberty Mutual points to Catullo's annual reviews for support.  For example, in 2007, Catullo's supervisor Stanley Gorecki rated her overall performance as below the range of effective performance, stating, "Pat continues to have a difficult time managing her caseload and keeping it current.   As a Sr. Claims Specialist Pat should be better organized and self-disciplined to ensure the successful management of her active caseload and her in-box."  App. at 217.

To demonstrate pretext, Catullo first states that other younger employees were promoted to Senior Claims Specialist II.   However, she does not produce any evidence to show that these employees were similarly situated to her, such as by having received similarly negative evaluations.  Catullo also states that Gorecki's supervisors told him to lower Catullo's evaluation ratings and raise the ratings of younger employees.   Gorecki testified that he was told by Linda Frey and Kevin Rawlins to lower or raise the ratings for certain employees according to perceptions of those employees' performances.   He was told to lower the ratings for Catullo and Rita Thompson, an employee younger than Catullo, because Frey and Rawlins felt they "weren't performing up to standard."  App. at 783.  Therefore, Catullo does not show that Liberty Mutual's reason for not promoting her is pretextual.

### III.

The District Court erred in dismissing Catullo's IIED claim, as Catullo did not have notice that this claim would be considered as part of the summary judgment motion.  A court must "giv[e] notice and a reasonable time to respond" before granting a motion for summary judgment on "grounds not raised by a party."  Fed. R. Civ. P. 56(f)(2); *see*

8

*also Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903, 910 (3d Cir. 1994) ("Under our cases, a district court may not grant summary judgment sua sponte unless the court gives notice and an opportunity to oppose summary judgment."); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (noting that in a summary judgment proceeding, nonmovant has ten days to **"**marshall his or her evidence to show that there is a genuine issue of material fact"). A party has notice when it "had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004) (internal quotation marks omitted).

Here, as the District Court itself noted, Liberty Mutual's motion for summary judgment did not address Catullo's IIED claim. However, the Court reached the merits of the IIED claim because in its summary judgment motion, Liberty Mutual stated summarily that it moved for judgment on all claims. This is insufficient to put Catullo on notice that her IIED claim would be considered by the Court, as Liberty Mutual did not present any facts or legal analysis related to this claim. *See Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir. 1997) ("A party has no obligation to respond to grounds that the moving party does not raise in a summary judgment motion."); *Edwards v. Honeywell, Inc.,* 960 F.2d 673, 674 (7th Cir. 1992) ("Honeywell never raised the causation ground in support of its motion for summary judgment. As such, Mrs. Edwards was not required to present evidence sufficient to raise an issue of material fact as to whether Honeywell's alleged negligence caused her husband's death; for its part, the district court was precluded from granting summary judgment on that ground."). Therefore, we remand the

9

IIED claim, so that Catullo may be given a chance to marshall her evidence before the District Court considers summary judgment.

IV.

As Catullo does not present sufficient evidence of pretext, we affirm the District Court's dismissal of her age discrimination claim. We vacate the dismissal of the IIED claim, as Catullo was not provided the required notice, and remand that claim to the District Court.

_____